## A99A0043. HOUSE v. THE STATE.
### (512 SE2d 287)

ELDRIDGE, Judge.

The defendant, Ronald Dewayne House, appeals his December 1997 conviction for the offenses of aggravated child molestation, child molestation, and rape of a seven-year-old girl. Finding no error, we affirm the convictions.

"On appeal[,] the evidence must be viewed in a light most favorable to the verdict, and appellant no longer enjoys a presumption of innocence; moreover, on appeal this court determines evidence sufficiency, and does not weigh the evidence or determine witness credibility. [Cits.]" *Grant v. State*, 195 Ga. App. 463, 464 (393 SE2d 737) (1990); see also *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). In evaluating the sufficiency of the evidence, "the relevant question is whether . . . *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Cit.]" (Emphasis in original.) *Jackson v. Virginia*, supra at 319.

Viewed in such light, the evidence in this case showed that, in 1997, the 33-year-old defendant lived for several weeks in Thomas County with a co-worker and his family. The co-worker's son, who was age 12 at the time of the 1997 trial, notified his mother that he had looked through a "crack" between the bathroom door and the wall of his home and that he had seen the defendant with the seven-year-old victim. At trial, the boy testified that "I seen Dewayne sitting on the bathtub with his clothes over here beside the bathtub and then my sister would have her clothes off. . . . I seen my sister going up and down." The boy also testified that he heard his mother tell the defendant to leave a few days later after she found the defendant lying on the couch next to the victim "and her [the victim's] legs was like this and then the sheet was throwed over and my mom thought that Dewayne had been messing with her."

The victim's mother confirmed this version of events during her testimony. The mother testified that she talked to the victim about the defendant and that the victim reported that the defendant "touched her on her vagina and her rectum and made her suck him." The mother claimed that she did not do anything about the reported

abuse at that time because the defendant was her "friend and I didn't think that he would do me like that." She also testified that she had been married to the victim's father for 13 years and that she did not report the child's abuse by either the defendant or her husband[1] because the father had "already choked me down one time and he told me that if I said anything he would hurt me. And I'm scared of him." However, the mother told a friend, who reported the abuse to the Department of Family & Children Services ("DFCS") on July 15, 1997.

Early the next morning, DFCS arrived at the victim's home and questioned the victim regarding the alleged abuse. During the interview, and subsequently at trial, the victim was "embarrassed," "shy," and reluctant to answer questions, and referred to her genitalia as her "coochie" and to the defendant's external genitalia as his "private" or his "weiner." The victim told DFCS caseworkers that she had had sexual contact with both the defendant and her own father, although she was equivocal regarding her father's abuse during her trial testimony. On a diagram of a girl's body, the victim marked x's where the defendant had placed his "private"; these areas included the mouth, hand, genitalia, and buttocks. According to the DFCS caseworkers, the victim reported that, on at least two occasions, the defendant had taken her hand and placed it on his penis and that he had rubbed her genitalia. At trial, the victim stated that the defendant *made* her touch his penis. The victim testified that she did not want to do so and did not like it.

The victim also told the caseworker that the defendant "*made* her suck his private part one time and she said that it was just for a little while. And I asked her was it small or was it big and she said that it was big. And I asked her, could she describe it to me and she say [sic] it was big with [red] sores." (Emphasis supplied.) The victim then drew a picture of the defendant's penis with circles which represented sores. According to the victim, the defendant also took the victim into the bathroom "lots and lots of times," and she told DFCS caseworkers that he "*made* her lean over the tub . . . and he was on his knees and he stuck his private in her private." (Emphasis supplied.)

However, when the victim told her mother about the abuse, her mother did not believe her, even though the mother admitted that she knew that the victim "was going into the bathroom with [the defendant] whenever he came over to their home." Instead, the

---

[1] In December 1997, the victim's father pled guilty to two counts of child molestation involving the victim, as well as one count of aggravated sodomy involving the victim's brother. He was incarcerated at the time of the defendant's trial, but testified for the defense and admitted his abuse of his daughter.

mother simply told the victim not to go into the bathroom with the defendant again. She also instructed the victim not to tell anyone else about the father's sexual abuse.

Following the DFCS interview, police officers took the victim to the hospital for a physical examination on July 17, 1997. Although the victim resisted a pelvic examination by a male physician, the physician was able to perform a rectal examination. The physician noted that the victim's anus "would barely admit one finger." The next day, a female emergency room physician conducted a pelvic examination of the victim. The physician had extensive experience in emergency medicine and was specially trained in treating victims of sexual assault. The physician testified that the examination was limited to an external exam of the victim's genitalia. The physician testified that she did not conduct an internal examination "because [children's] vagina's [sic] are fairly small and it's very hard to look at the internal organs with [a] speculum." The physician testified that the victim's hymen had been torn away in the past and that, in "prepuberty" girls, is often caused by "some sort [of] sexual exploration or abuse." She then stated that the victim had an area at the entrance to her vagina "that was very indurated and hypertrophy that could really be best described as a callus," which was caused by "[r]epeated rubbing or manipulation of the area." The physician further described the vaginal area as "exactly what you would expect that she had been assaulted over a period of time where there was time for an *injury* to sort of build up on that little area that I referred to as a callus to form and her hymen was not showing any signs of any fresh injury. That was something that had happened in the past and had had time to heal, also." (Emphasis supplied.) When asked whether the physician had ever seen such injury in a "grown woman," she replied "No." The physician also testified that, at 44 pounds, the seven-year-old victim was a "little on the small size for her age."

Police officers arrested the defendant, who was questioned by the officers on the same night. Following *Miranda*[2] warnings, the defendant wrote out a statement denying his involvement in any drug-related activity in the victim's home. The defendant did not mention any sexually-oriented contact with the victim in this statement. Id. During this interview, police officers requested the defendant to expose his penis. The officers later testified that they observed several red spots, which appeared to be similar to scars or a rash, on the defendant's penis. During a subsequent interview, following a waiver of his rights, the defendant admitted that he had had sexual

---

[2] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

contact with the victim, but alleged that the seven-year-old victim had attempted to seduce *him* by touching his "crotch" and "balls" about ten to fifteen times, pulling down her pants, telling him she wanted to have sex, and sitting on his lap and moving around until he got an erection. According to the defendant, this usually occurred when no one else was around.

On October 23, 1997, the Thomas County Grand Jury indicted the defendant on two counts of child molestation and one count each of aggravated child molestation and rape. A jury trial was conducted which resulted in guilty verdicts on all four counts. The defendant was sentenced to concurrent terms of twenty years in prison, ten to serve. The trial court denied the defendant's motion for new trial, and the defendant appeals. *Held*:

1. In his first enumeration of error, the defendant claims that the trial court erred when it denied his motion for new trial as to the rape charge. The defendant asserts that the State failed to prove beyond a reasonable doubt the element of force. We disagree.

Under OCGA § 16-6-1 (a), "[a] person commits the offense of rape when he has carnal knowledge of a female forcibly and against her will." In *State v. Collins*, 270 Ga. 42 (508 SE2d 390) (1998) (*"Collins"*), the Supreme Court of Georgia recently reiterated that the terms "forcibly" and "against her will" are two separate elements of proving rape. See also *Drake v. State*, 239 Ga. 232 (236 SE2d 748) (1977). "The term 'against her will' means without consent; the term 'forcibly' means acts of physical force, threats of death or physical bodily harm, or *mental coercion, such as intimidation.* . . . [T]he state must prove the element of force as a factual matter in forcible rape cases rather than presuming force as a matter of law based on the victim's age. . . . [However,] the quantum of evidence to prove force against a child is minimal, [since] [p]hysical force is not required. *Intimidation may substitute for force."* (Citations and punctuation omitted; emphasis supplied.) *Collins*, supra at 43. Further, " '[f]orce may be proved by direct or circumstantial evidence.' *Daniel v. State*, 194 Ga. App. 495, 496 (391 SE2d 128) [(1990)]." *Gibbins v. State*, 229 Ga. App. 896, 898 (1) (495 SE2d 46) (1997). *"Lack of resistance, induced by fear, is force*, and may be shown by the prosecutrix' state of mind from her prior experience with appellant and subjective apprehension of danger from him." (Citations and punctuation omitted; emphasis supplied.) *Calloway v. State*, 199 Ga. App. 272, 273 (1) (404 SE2d 811) (1991). See also *Collins*, supra at 43; *Gibbins*, supra. In her dissent to *Collins*, supra at 49, Justice Hunstein noted that a young child may also be "rendered psychologically incapable of dissenting to intercourse as a result of her prior sexual abuse by a third party." See also *Gibbins*, supra. This is precisely the fact pattern this case presents.

In this case, the seven-year-old victim weighed a mere 44 pounds. She suffered numerous episodes of severe sexual abuse at the hands of both her father and the defendant, a 33-year-old adult who frequently was left alone with the victim and/or her brother. Prolonged sexual abuse resulted in observable physical injuries to her vaginal area. The victim repeatedly stated that the defendant "made" her perform and accommodate sexual acts, including leaning over the side of the bathtub while the defendant sexually assaulted her from behind. The victim's outcries to her mother were ignored and she was warned not to tell anyone about her father's abuse. Under these circumstances, the jury was authorized to determine that, from the victim's perspective, further resistance was futile.

Accordingly, the evidence was sufficient for a rational trier of fact to find that the State proved the element of force beyond a reasonable doubt. See *Jackson v. Virginia*, supra.

2. However, in contrast to its handling of rape cases,[3] the Supreme Court has reiterated that it is *not* necessary to prove force in cases of incest (OCGA § 16-6-22), sodomy (OCGA § 16-6-2 (a)), and aggravated sodomy (OCGA § 16-6-2 (a)).[4] *Collins*, supra at 43; *Richardson v. State*, 256 Ga. 746 (353 SE2d 342) (1987); *Cooper v. State*, supra; see also *Brown v. State*, 268 Ga. 154 (486 SE2d 178) (1997). "Because children do not have the capacity to give consent to or resist a sexual act directed at them, such acts are, in law, *forcible* and against the will of the child." (Citations and punctuation omitted; emphasis supplied.) *Collins*, supra at 43.

In this appeal, the defendant challenges the sufficiency of the evidence as to his aggravated child molestation conviction. However, aggravated child molestation requires only proof of child molestation[5] that either physically injures a child or involves an act of sodomy. OCGA § 16-6-4 (c). Under OCGA § 16-6-4 (a), a prosecution for child

---

[3] The Supreme Court stated that, because "the crime of rape is unlike any other crime" since it "may, under [some] circumstances, be desirable to the victim[,] . . . the uniqueness of [rape] justifies treating it differently from related sexual offenses." (Citation and punctuation omitted.) *Collins*, supra at 44. Further, the Court reasoned that, because forcible rape has a strict liability counterpart in the crime of statutory rape, the elements of force and lack of consent must be proven in forcible rape. However, this argument ignores the fact that both sodomy (OCGA § 16-6-2 (a)) and aggravated child molestation (OCGA § 16-6-4 (c)), are, in fact, strict liability versions of aggravated sodomy, a crime for which force and lack of consent are implied by law when it involves underage victims. See OCGA § 16-6-2 (a); *Collins*, supra at 51-52 (Hunstein, J., dissenting); *Cooper v. State*, 256 Ga. 631 (352 SE2d 382) (1987).

[4] In addition, "constructive force," i.e., the force necessary to accomplish penetration, is implied in cases involving the forcible rape of an incapacitated adult. See *Drake v. State*, supra at 234-235.

[5] "A person commits the offense of child molestation when he or she does any immoral or indecent act to or in the presence of or with any child under the age of 16 years with the intent to arouse or satisfy the sexual desires of either the child or the person." OCGA § 16-6-4 (a).

molestation does not require proof of force. But see *Brown v. State*, supra. Further, no demonstration of force is required to prove sodomy.[6] OCGA § 16-6-2 (a).

Accordingly, it follows that, under the facts as presented in the record, the evidence clearly was sufficient for a rational factfinder to find the defendant guilty beyond a reasonable doubt of aggravated child molestation. See OCGA § 16-6-4 (a), (c); *Jackson v. Virginia*, supra.

3. The defendant also asserts that the trial court erred when it refused to allow defense counsel to question the victim's brother or mother about alleged sexual abuse of the boy by his father, who was also the victim's father. The defendant claims that such evidence would demonstrate that the victim may have had the opportunity to learn about sexual abuse by witnessing the abuse of her brother. Under the circumstances of this case, this argument has no merit.

In 1997, immediately prior to the defendant's trial, the victim's father pled guilty to child molestation of the victim and to aggravated sodomy involving the victim's brother. The molestation of the brother occurred in 1991, when the brother of the victim was six years old and the victim was only one year old. The victim's mother testified that the victim was a baby that could not talk and could "barely" walk at the time of her brother's abuse. According to the victim's mother, the father made the victim's brother "suck him."

The cases cited by the defendant in support of his attempt to bring in evidence of past sexual abuse of the victim's brother by someone other than the defendant were cases in which defense counsel was allowed to introduce evidence of past sexual abuse by third parties of the young *victims* at issue in those cases. This evidence was utilized to demonstrate that the victims, who might normally be unaware of sexual practices and abuse, may have had the opportunity to learn about sexual abuse from a source other than the defendants, or that the victims may be exhibiting "Child Abuse Accommodation Syndrome," i.e., behavioral symptoms of abuse that were caused by sexual abuse by a third party. See *Marion v. State*, 206 Ga. App. 159 (424 SE2d 838) (1992); *Hall v. State*, 196 Ga. App. 523, 525 (2) (396 SE2d 271) (1990). The defendant cites to no cases which support his proposition that he should be allowed to question a *child other than the victim about sexual abuse by a non-defendant* in order to demonstrate that the victim may have learned about sex by *witnessing* such abuse. This Court expressly disapproves of such questioning and finds that, under the circumstances of this case, such

---

[6] "A person commits the offense of sodomy when he or she performs or submits to any sexual act involving the sex organs of one person and the mouth or anus of another." OCGA § 16-6-2 (a).

questioning is violative of the witness' privacy interests, unduly speculative, and irrelevant to the issue of whether the *defendant* molested *this specific victim*. This is particularly true when the molestation of the brother occurred when the victim was only one year old. There is no evidence in the record that the victim was aware of the brother's past sexual abuse, and it is extremely unlikely that a rational juror would find that the victim may have learned about sex from incidents which occurred when she was a mere infant. Accordingly, there was no error.

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

DECIDED JANUARY 25, 1999 —
RECONSIDERATION DENIED FEBRUARY 11, 1999.

*Whitehurst, Cohen & Blackburn, Catherine M. Williams, Steven B. Kelley,* for appellant.

*J. David Miller, District Attorney, James E. Hardy, Mark E. Mitchell, Assistant District Attorneys,* for appellee.