### A10A1198. WOODS v. THE STATE.
(696 SE2d 411)

ELLINGTON, Judge.

A Fulton County jury found Stanley Woods guilty beyond a reasonable doubt of three counts of aggravated child molestation, OCGA § 16-6-4 (c); two counts of aggravated sexual battery, OCGA § 16-6-22.2 (b); and six counts of child molestation, OCGA § 16-6-4 (a) (1), arising from the sexual abuse of a friend's nine-year-old daughter. He appeals from the denial of his motion for new trial, asserting that the evidence was insufficient to sustain his conviction, that the trial court erred in admitting similar transaction evidence, and that the court erred in granting the State's motion in limine. He also contends that he received ineffective assistance of counsel. For the following reasons, we affirm.

1. Woods contends that the evidence was insufficient to support his convictions, arguing that the testimony of the victim and the other prosecution witnesses was not credible, consistent, or corroborated.

> On appeal from a criminal conviction, we view the evidence in the light most favorable to the verdict and an appellant no longer enjoys the presumption of innocence. This Court determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979), and does not weigh the evidence or determine witness credibility. Any conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, we must uphold the jury's verdict.

(Citations omitted.) *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004). The standard of *Jackson v. Virginia* is met if the evidence is sufficient for any rational trier of fact to find the defendant guilty beyond a reasonable doubt of the crime charged. *Clark v. State*, 275 Ga. 220, 221 (1) (564 SE2d 191) (2002).

Viewed in this light, the record reveals the following facts. In the summer and fall of 2004, when Woods was thirty-eight years old, he

regularly assisted a family friend by taking care of her nine-year-old daughter (hereinafter, "the victim"). Woods picked up the victim from school, watched her while her mother was not at home, and took her out to eat, to the park, to her medical appointments, and to his job sites. He also purchased clothes, including underwear, and other items for the victim. According to the victim, during the same time period, Woods regularly sexually abused her at her home and at other places, including his car, an isolated area of a nearby park, a vacant house, and two motels, an "Executive Inn" and a "Super 8 Motel," that were located next to each other. The victim described several separate incidents in which Woods kissed her and inserted his tongue in her mouth; touched her breasts, genitals, and anus; performed oral sex on her; made her perform oral sex on him; and anally sodomized her. In addition, on three occasions, Woods made her take off her clothes, gave her thong underwear to put on, and used his cell phone to take pictures of her buttocks and genital area.

Even though Woods told the victim not to tell her mother about the abuse, she finally told her mother about some of the incidents in January 2005. The mother called 911, and an investigator referred them to the Georgia Center for Children for a forensic interview and to Grady Hospital for a sexual abuse examination. The forensic interviewer testified at trial, and a videotape of the interview was played for the jurors, who were provided with transcripts. During the interview, the victim reported acts by Woods that were consistent with those described above.

During the police investigation, the victim identified the store where Woods bought her certain items and the two motels where Woods had molested her. The victim also identified the motels and described the motel rooms at trial and testified that, at the Executive Inn, a black man with gray hair gave Woods a key to a room, but told Woods that he could not park his truck in the back of the motel. The State presented registration records from both motels and the testimony of a handwriting expert; this evidence established that Woods had rented a room for a single night at each motel during the time period at issue. Further, the night clerk at the Executive Inn testified that he remembered registering a man and a young girl for a room in October 2004, because he had told the man that he could not park his pickup truck in the back of the motel.

In addition to this evidence, the State presented the testimony of the victim's mother and teachers, who testified that, at the beginning of the 2004-2005 school year, the victim was a respectful, conscientious, and quiet honor student who dressed "very pretty" for school, wearing hair bows and, occasionally, dresses. During the spring semester, however, the victim's grades began to drop, she

stopped doing her homework, she became angry and mean to other students, she dressed in baggy, "tomboyish" clothing, and she was afraid to be alone.

The State also showed that, in November 2004, Woods called his cell phone company's customer service department to complain that he was unable to take pictures with his cell phone, access the pictures on his cell phone, or send pictures from his cell phone. Although the company offered to exchange the cell phone for a new one under the warranty, Woods declined the offer.

Finally, the State presented the testimony of two similar transaction witnesses.[1]

Woods testified on his own behalf and admitted that he had taken the victim to school and picked her up afterward, that he had taken her to the park, the neighborhood pool, and his work sites, and that he had been alone with the child during the relevant time period. However, Woods specifically denied kissing the victim, engaging in oral or anal sodomy with the victim, taking the victim to a vacant house or to a motel, and buying the victim underwear.

Although Woods challenges the credibility of the victim and asserts that the victim's testimony was not adequately corroborated, "[t]he testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. See *Hammontree v. State*, 283 Ga. App. 736, 737 (1) (642 SE2d 412) (2007) (the victim's testimony alone was sufficient to establish the elements of child molestation). Moreover, to the extent that there were inconsistencies or conflicts in the evidence, "[a] jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it." (Citation and punctuation omitted.) *Bray v. State*, 294 Ga. App. 562, 563 (1) (669 SE2d 509) (2008). Having viewed the evidence in the light most favorable to the jury's verdict, we conclude that it was sufficient for a rational factfinder to find Woods guilty beyond a reasonable doubt of the crimes charged. *Jackson v. Virginia*, 443 U. S. at 319 (III) (B).

2. Woods contends that the trial court erred in admitting evidence of two similar transactions, arguing that those acts were not sufficiently similar to the offenses for which he was charged. Specifically, Woods argues that each prior transaction involved a single act of forceful, nonconsensual vaginal intercourse (i.e., rape) with an adult woman, while, in this case, the State charged Woods with repeatedly committing "unforced" anal sodomy and several other offenses over a period of months with a nine-year-old girl, but it did not charge Woods with having vaginal intercourse with the

---

[1] See Division 2, infra.

406

victim or committing any offense involving force.

> In general, evidence of independent offenses committed by a defendant is irrelevant and inadmissible in a trial for a different crime. In some cases, however, evidence of similar crimes (or transactions) is admissible where its relevance to show identity, motive, plan, scheme, bent of mind and course of conduct, outweighs its prejudicial impact. Before evidence of prior crimes is admissible, the trial court must determine that the State has affirmatively shown that: (1) the State seeks to admit evidence of the independent offenses or acts for an appropriate purpose; (2) there is sufficient evidence that the accused committed the independent offenses or acts; and (3) there is sufficient connection or similarity between the independent offenses or acts and the crimes charged so that proof of the former tends to prove the latter.

(Citations and punctuation omitted.) *Pareja v. State*, 286 Ga. 117, 119 (686 SE2d 232) (2009).

> In reviewing [a] trial court's decision to admit [a] similar transaction . . . , we must be mindful that this decision should be upheld unless it is an abuse of discretion. Furthermore, when considering the admissibility of similar transaction evidence, the proper focus is on the similarities, not the differences, between the separate crime and the crime in question. This rule is most liberally extended in cases involving sexual offenses [against a victim who could not or did not give consent] because such evidence tends to establish that a defendant has such bent of mind as to initiate or continue a sexual encounter without a person's consent.

(Citations and punctuation omitted.) Id. at 121.

As a general rule, "the sexual molestation of young children or teenagers, *regardless of the type of act*, is sufficiently similar to be admissible as similar transaction evidence." (Citation, punctuation and footnote omitted; emphasis supplied.) *Kendrick v. State*, 269 Ga. App. 831, 834 (3) (605 SE2d 369) (2004). Moreover,

> no Georgia case holds that the difference in age of the victims is alone determinative of similarity. Our precedent consistently holds that it is the totality of the similar facts surrounding the crimes which are properly considered in a

similar transaction analysis. [Thus, a] mere difference in age of the victims (one is an adult and the other a child) will not render the prior transaction inadmissible.

(Citation, punctuation and footnote omitted.) *Walley v. State*, 298 Ga. App. 483, 484 (1) (680 SE2d 550) (2009) (finding no error in the trial court's decision to admit similar transaction evidence of a rape of a 22-year-old woman during the trial on charges that the defendant touched the 12-year-old victim's "private parts" underneath her underwear while she was asleep). Ultimately, on appeal, this Court will not disturb a trial court's finding that there is sufficient similarity or a logical connection between the similar transaction and the charged crime so that the former is admissible to prove the latter unless that finding is clearly erroneous. *Kendrick v. State*, 269 Ga. App. at 834 (3).

In this case, the first similar transaction witness testified that, in June 2002, Woods, who was a friend of her family, picked her up in his car to take her on an errand. At the time, the witness was 18 years old. During the trip, Woods purchased clothes, including thong underwear and a bra, for the witness. They then went to Woods' home, and Woods started touching her buttocks and breasts. When she resisted his advances, Woods pushed her down, hit her repeatedly with a belt and his fists, forced her to perform oral sex on him, and raped her.

The second similar transaction witness testified that, in May 2003, when she was about 18 years old, she offered Woods five dollars to give her a ride home. Woods drove her to his house instead and, when they were inside, he threw her on his bed, put his hand on her throat, and raped her. Although the State initially charged Woods with rape based upon this incident, he pleaded guilty to a reduced charge of aggravated assault.

In ruling that the similar transactions were sufficiently similar to be admissible, the trial court noted that Woods was about thirty-five years old when he attacked each of the similar transaction witnesses, who were seventeen or eighteen years old — just eight or nine years older than the victim in this case, but significantly younger than Woods. The court also noted that both of the similar transactions involved some type of "sexual deviancy," as did the instant case, and assured defense counsel that they would have the opportunity to thoroughly cross-examine the witnesses at trial.

We find that the trial court did not err in concluding that the similar transactions were sufficiently similar to the instant case to be admissible. *Pareja v. State*, 286 Ga. at 121; *Walley v. State*, 298 Ga. App. at 484 (1); *Kendrick v. State*, 269 Ga. App. at 834 (3).

3. Woods argues that the trial court erred in granting the State's motion in limine to prevent defense counsel from impeaching a prosecution witness, the night clerk at the Executive Inn, with copies of the witness' prior convictions. As shown above, the night clerk testified that he remembered registering a man and a young girl for a room in October 2004, because he had told the man that he could not park his pickup truck in the back of the motel. Defense counsel sought to impeach the night clerk's credibility by showing that he had been convicted of burglary in 1980, forgery in 1982, and forgery in 1994.

Under OCGA § 24-9-84.1 (b), evidence of a conviction for a felony or a crime involving dishonesty is not admissible for the purpose of impeaching a witness

> if a period of more than ten years has elapsed since the date
> of the conviction or of the release of the witness . . . from the
> confinement imposed for that conviction, whichever is the
> later date, unless the court determines, in the interest of
> justice, that the probative value of the conviction supported
> by specific facts and circumstances substantially outweighs
> its prejudicial effect.

The trial court ruled that the defense would not be allowed to impeach the witness with the convictions, stating that it had weighed the probative value of the evidence versus its prejudicial impact pursuant to the statute and because the convictions were over ten years old.

Given the jury's opportunity to consider the accuracy of the night clerk's memory in light of the 17-month gap between the October 2004 incident and the trial, as well as the trial court's determination that the evidence of his prior convictions was more prejudicial than probative, we find no abuse of discretion in the court's ruling on this issue. See *Carter v. State*, 296 Ga. App. 598, 601, n. 7 (675 SE2d 320) (2009) (This Court reviews a trial court's ruling on the admission of evidence under an abuse of discretion standard.).

4. Woods contends that he received ineffective assistance of trial counsel, as outlined below.

> In order to prevail on a claim of ineffective assistance of
> counsel, a criminal defendant must show that counsel's
> performance was deficient and that the deficient perfor-
> mance so prejudiced the [defendant] that there is a reason-
> able likelihood that, but for counsel's errors, the outcome of
> the trial would have been different. The criminal defendant

must overcome the strong presumption that trial counsel's conduct falls within the broad range of reasonable professional conduct.

(Citations and punctuation omitted.) *Robinson v. State*, 277 Ga. 75, 75-76 (586 SE2d 313) (2003). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

As a general rule, reasonable trial tactics and strategies do not amount to ineffective assistance of counsel. *Grier v. State*, 273 Ga. 363, 365 (4) (541 SE2d 369) (2001). "The decisions on which witnesses to call and all other strategies and tactical decisions are the exclusive province of the lawyer after consultation with his [or her] client." (Citation and punctuation omitted.) *Moreland v. State*, 263 Ga. App. 585, 588 (4) (588 SE2d 785) (2003). "Deciding what evidence to present or to forego in defending a client charged with a crime is a matter of strategy and tactics." (Citation omitted.) *Nichols v. State*, 281 Ga. 483, 485 (2) (a) (640 SE2d 40) (2007).

"Whether an attorney's trial tactics [were] reasonable is a question of law, not fact." (Citation and punctuation omitted.) *Moreland v. State*, 263 Ga. App. at 588 (4). When assessing the reasonableness of counsel's actions, a court must evaluate counsel's performance from his or her perspective at the time of trial. *Grier v. State*, 273 Ga. at 365 (4). Finally, when this Court reviews a trial court's ruling on an ineffective assistance claim on appeal, "[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts." (Citation and punctuation omitted.) *Robinson v. State*, 277 Ga. at 76.

(a) Woods complains that his trial counsel was deficient when she failed to object to, or to move for a mistrial based on, testimony by a victim-witness advocate. The advocate testified that she assisted the victim and her family before trial, helping them get comfortable with the judicial process and the courtroom. While working in that capacity, the advocate was present when the prosecutor spoke with the victim on four or five occasions, and she heard the victim disclose specific details of sexual abuse by Woods, including the acts for which he was charged.

(i) Although the advocate did not take notes about the victim's statements to the prosecutor, she testified that she had "dealt with a lot of sexual abuse cases, and I just remember feeling with this one [in] particular that there wasn't anything that . . . he had not done to this child." Woods' counsel did not object to this testimony. During cross-examination, Woods' counsel elicited the advocate's testimony that, during the past two and one half years, she had worked with eight or nine child victims, meeting with each of them about three

times. Woods' counsel then asked the advocate how she was able to recall each individual child victim and the specifics of what they said when she did not take notes during the sessions. The advocate responded that it was due to her training and years of experience, noting that "each case is different to me."

On re-direct, the prosecutor followed up on trial counsel's line of questioning, asking the advocate, "Why does this case, this particular case, stand out in your mind?" The advocate responded, without objection, as follows: "Because it was horrific. Because it was one sexual act after another. It was one betrayal of trust after another. And there are some cases that are so horrendous in the level of trust that's been abused and the sexual acts that happen that it stays with you, and this one has stayed with me."

On appeal, Woods argues that his trial counsel should have objected or moved for a mistrial, complaining that this statement was "grossly over-dramatic" and "intended solely to appeal to the emotions of the jury."

Although Woods' trial counsel testified at the new trial hearing that she could not specifically recall why she did not object to this testimony at trial, she also testified that the defense's strategy was to attack the credibility of the advocate by showing that she had handled many child sexual abuse cases without taking notes on them, yet was somehow able to recall the facts of this case "off the top of her head." As shown above, the cross-examination of the advocate was consistent with this trial strategy. Given this line of questioning, the prosecutor's follow-up question was a legitimate effort to rehabilitate the witness. The fact that the witness' answer was prejudicial to Woods does not mean that it was necessarily objectionable.

Given the overwhelming evidence presented at trial, particularly the detailed and explicit testimony of the victim, Woods has failed to show that there is a reasonable likelihood that the outcome of the trial would have been different if his counsel had objected to the advocate's statement or moved for a mistrial. See *Johnson v. State*, 281 Ga. 770, 772 (2) (b) (642 SE2d 827) (2007) (counsel's failure to move for a mistrial or ask for a curative instruction when a witness referred to the victim's death as "this murder" did not amount to ineffective assistance when the defendant failed to show that, but for such failure, there was a reasonable probability that the outcome of the trial would have been different).

(ii) The transcript also shows that, during re-cross-examination, Woods' counsel elicited the advocate's opinion that, based on what the victim had described to her, Woods had, in fact, penetrated the victim's anus with his penis. Although Woods complains on appeal that the testimony was the only evidence that Woods had anally

sodomized the victim, the trial transcript shows that the victim consistently testified that Woods put his "wiener" or "private part" *in* her "backside" on three different occasions. In fact, during cross-examination, she specifically corrected trial counsel, who asked about the first time Woods put his "private part" in her "private part," stating that Woods put his "private part" in her "backside," not her "private part."

Accordingly, this claim of ineffective assistance lacks merit. The failure to object to evidence which is merely cumulative of other admissible evidence does not amount to ineffective assistance of counsel. *Purvis v. State*, 301 Ga. App. 648, 653 (2) (e) (689 SE2d 53) (2009); *Thomas v. State*, 296 Ga. App. 170, 174 (2) (c) (674 SE2d 56) (2009).

(b) Woods contends that trial counsel improperly failed to renew an objection to the admission of similar transaction evidence at the time the evidence was offered at trial.[2] Because the similar transaction evidence was admissible,[3] however, Woods is unable to show that an objection to the evidence during trial would have been successful. Accordingly, counsel's failure to object does not constitute ineffective assistance. *McCoy v. State*, 285 Ga. App. 246, 249 (4) (b) (645 SE2d 728) (2007) ("failure to make a meritless argument does not constitute ineffective assistance of counsel") (footnote omitted).

(c) Woods claims that counsel was deficient because she failed to ensure that he denied every allegation in the indictment during his trial testimony. Although Woods specifically denied kissing the victim, engaging in oral or anal sodomy with the victim, taking the victim to a vacant house or to a motel, and buying the victim underwear, he now argues that "[a]ny competent attorney would go through the indictment, count by count, and have the accused deny each allegation, or otherwise address each allegation." During the hearing on the motion for new trial, however, Woods' counsel testified that she did not have Woods specifically address and deny each and every allegation in the indictment because she did not think it was necessary when he had already given a general denial to the charges. As noted above, reasonable trial tactics and strategies do not amount to ineffective assistance of counsel. *Grier v. State*, 273 Ga. at 365 (4). Because Woods has failed to show that his counsel's decisions regarding this trial strategy were unreasonable under the

---

[2] See *Dixon v. State*, 285 Ga. 312, 317 (4) (677 SE2d 76) (2009) ("Although [the defendant] objected to the similar transaction evidence at a pre-trial hearing conducted pursuant to Uniform Superior Court Rule 31.3 (B), he raised no objections when any of the evidence was elicited during trial, as he was required to do to preserve the issue on appeal.") (citation omitted).

[3] See Division 2, supra.

circumstances, this ineffective assistance claim must fail.

(d) Woods contends that he was prejudiced by counsel's failure to object or move for a mistrial when, during closing arguments, the prosecutor told the jury, "I submit there's probably more we don't even know today." According to Woods, the suggestion that he may have committed additional crimes beyond those for which he was on trial was especially harmful because of the prosecutor's "special status in the eyes of the jury."

The trial transcript shows that, during defense counsel's opening statement, she repeatedly emphasized that each time the investigators, the interviewer, or the victim's physician asked the victim about what Woods had done to her, the victim "kept adding" to her story and "kept elaborating" on details. Counsel then told the jury, "Because people keep asking, [the victim] keeps saying stuff. She keeps adding things. *I don't know where it will end.*" (Emphasis supplied.)

As counsel had anticipated, the evidence at trial showed that, as the investigation progressed, the victim reported more incidents of sexual abuse by Woods than those she had initially reported. The forensic interviewer explained why this might happen, testifying that, in her experience, a child sexual abuse victim's

> outcry is a process. It is not a single incident. It's very rare that you'll get a child that will say everything that happens to them in one [sitting]. It's extremely difficult for a child to say the information that they are saying, and it typically comes out in little bits. It's very typical that it will happen in more than one interview or more than one discussion.

The interviewer also testified that it is possible for children to suppress or forget some details initially and then recall them later, stating that, "Children remember what is the most intense for them, typically. And a lot of other details may kind of go by the wayside."

During closing arguments, the prosecutor responded to defense counsel's earlier query, as follows:

> And you remember the comment that [defense counsel] made to you [during opening statements], "Where does it end?" This was her statement in opening, "Where is this going to end?" I don't know where it's going to end. I submit there's probably more we don't even know today. It's going to be an ongoing process for this child for the rest of her life. But I'm asking you today, I want it to end now. I want you to hold Stanley Woods responsible for every single thing he did to this child. I want you to find him guilty.

During the motion for new trial hearing, trial counsel stated that, while the argument may have been objectionable, "I think also that the jury can rely on their own remembrance as to what the evidence was[,] . . . which is what we tried to argue about, what evidence was presented." Further, the record shows that the trial court instructed the jury about the specific charges in the indictment, and the jury had the indictment with them during deliberations.

Thus, Woods has failed to demonstrate that, under the totality of circumstances, counsel's failure to object to the prosecutor's statement fell outside the broad range of reasonable professional conduct or that there was a reasonable likelihood that the outcome of the trial would have been different if counsel had objected. *Robinson v. State*, 277 Ga. at 75-76.

(e) Woods claims that trial counsel failed to provide him with all of the discovery materials and, as a result, he was prevented "from being in a better position to advise [counsel] on how to defend against the accusations made against him." It is undisputed that the attorney who initially represented Woods, Michelle Homier, met with Woods before trial, handled discovery matters, investigated the case and interviewed witnesses, developed trial strategy, and handled plea negotiations before she was joined by her co-counsel, Lawanda O'Bannon, when the case was put on the trial calendar. At Woods' motion for new trial hearing, O'Bannon testified that, based upon what Homier had told her, she thought that everything that Woods had wanted to present at trial had been presented. Woods did not call Homier as a witness during the hearing.

In order to prevail on his ineffective assistance claim, Woods had the burden of rebutting by clear and convincing evidence the strong presumption that his attorney was effective. *Jones v. State*, 279 Ga. 854, 855 (2) (622 SE2d 1) (2005). He did not call Homier to testify at the hearing on the motion for new trial, however, and without such testimony, he failed to overcome that presumption. Id. In addition, Woods has failed to identify in his appellate brief any evidence that he was entitled to see before trial but which was withheld from him until trial. Accordingly, this claim of ineffective assistance of counsel presents no basis for reversing his convictions.

*Judgment affirmed. Andrews, P. J., and Doyle, J., concur.*

DECIDED JUNE 11, 2010.

*Charles H. Frier*, for appellant.

*Paul L. Howard, Jr., District Attorney*, for appellee.