### A10A1700. COBB v. THE STATE.
(709 SE2d 9)

DOYLE, Judge.

David Aaron Cobb was charged with two counts of aggravated child molestation[1] (Counts 1 and 2) and four counts of child molestation[2] (Counts 3 through 6) against two children. A Hall County jury found Cobb guilty of aggravated child molestation (Count 2) and

---

[1] OCGA § 16-6-4 (c).

[2] OCGA § 16-6-4 (a) (1).

child molestation (Count 5); he was acquitted of the remaining charges. Cobb appeals following the denial of his motion for new trial, challenging the sufficiency of the evidence and arguing that the trial court erred by admitting certain testimony and prohibiting him from cross-examining an expert witness regarding a particular matter. He also alleges that he received ineffective assistance of counsel. We affirm for the reasons that follow.

> On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict, and the defendant no longer enjoys the presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia.*[3] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld. The testimony of a single witness is generally sufficient to establish a fact.[4]

So viewed, the evidence shows that Michelle Epps and her three children from a previous marriage — H. L., M. L., and C. L. — lived with Michelle's husband, Mark Epps, and his three children from a previous marriage — Jo. E., Ja. E., and K. E. Mark's three children intermittently had court-ordered overnight visits with their mother (Mark's former wife), Teresa Cobb, and her husband, Appellant Cobb; Michelle's daughter, C. L., accompanied Mark's children to the Cobbs' home on three or four occasions. In February 2007, K. E. told Michelle that Cobb "had raped her." Michelle and Mark discussed the allegations with K. E., and they recorded the conversation. Michelle contacted the authorities the following day. Shortly thereafter, C. L. told Michelle that "something had happened to her too." Michelle stopped the conversation and arranged for C. L. to speak with her school counselor.

After the police investigation, including physical examinations and forensic interviews of K. E. and C. L., as well as interviews of some of their siblings, the State indicted Cobb, charging him with aggravated child molestation and two counts of child molestation of C. L. (Counts 1, 3, and 4) and aggravated child molestation and two

---

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[4] (Punctuation and footnote omitted.) *Shorter v. State*, 271 Ga. App. 528, 528-529 (1) (610 SE2d 162) (2005).

counts of child molestation of K. E. (Counts 2, 5, and 6). The first trial against Cobb, held in January and February 2009, resulted in a hung jury and mistrial.

The case proceeded to a second trial in March 2009. K. E., who was nine years old at the time of trial, testified that Cobb used to stare at her when she was changing. On one occasion, when the family was staying in a hotel, Cobb got into bed with K. E. and "pulled out his thing and started rubbing it between [her] legs," and he moved "his wrong spot" "back and forth." On another occasion, Cobb got into bed with K. E., "took his finger and put it in [her] . . . panties, and he started moving it around." Another time, while she was sitting on Cobb's lap, he "put his hand on top of [her] blue jeans, under [her] waist where [her] wrong spot is, the front part, and rubb[ed] it." On another occasion, Cobb approached K. E., who was reclined on the couch, and "he got under the covers, and he lifted up [her] T-shirt, and he pulled down [her] panties, and he started kissing [her] wrong spot with [his] open mouth." C. L., who was 11 years old at the time of trial, testified that Cobb would watch her and K. E. change clothes. According to C. L., Cobb touched her "private spot" on more than one occasion, and he "rubbed a little."

The State also introduced the testimony of several similar transaction witnesses, including K. E.'s brothers, Jo. E. and Ja. E., as well as another child. Jo. E., who was 13 years old at the time of trial, testified that Cobb "pulled his tally-wacky out of his pants," which "was sticking straight up," displayed it to Jo. E. and to Ja. E., and asked "who wants to suck it first." Afterward, Cobb instructed the boys "not to tell." Jo. E. also testified that on another occasion, he was in bed with Cobb, and "the covers were going up and down," and Cobb then went into the bathroom and came back out "a second later" with a cup of "white stuff" in it, and told Jo. E. to drink it. Jo. E. complied, and he testified that it was "sticky and sourish." Ja. E. was 11 years old at the time of trial, and he testified that he saw Cobb get into bed with K. E., "wiggl[e] around," and "get[ ] closer to her," while the family was in a hotel. He also testified that Cobb approached him and his brother, Jo. E., pulled out "his private part" in front of them, and "ma[de] it go up and down with his hand." Both boys testified that Cobb would watch them while they bathed.

The State also presented a third similar transaction witness, C. S., who was ten years old at the time of trial. C. S. testified that she used to visit one of Cobb's neighbors, and stated that Cobb rubbed her thigh, close to her private area, on more than one occasion. She also recalled one occasion when she sat on Cobb's lap in the car, and he touched her chest and kissed her neck. Cobb also called C. S. "sweetheart" and "baby doll."

The State introduced the videotaped forensic interviews of K. E.,

C. L., and C. S. Additionally, Helen West, a social worker and therapist, who treated K. E. and C. L. regularly for a year and also treated Jo. E. and Ja. E., testified. According to West, both girls experienced "post traumatic stress symptoms, anxiety, depression, fear, difficulty sleeping, and irritability . . . [, and K. E.] has some very attention[-]seeking sexualized behaviors." Dr. Julie Battle, who was qualified as an expert and conducted the interviews, also testified, as did Chana Skelton, a therapist who interviewed C. L., K. E., Jo. E., and Ja. E., and a police investigator who spoke with the children. Finally, the State introduced the testimony of James Weber, one of Cobb's friends and former co-workers, who stated that he walked into Cobb's house without knocking and observed Cobb performing oral sex on K. E. when she was four or five years old.

Cobb testified at trial and introduced multiple witnesses, including his wife, Teresa, his sister, and an expert witness. At the conclusion of the trial, the jury found Cobb guilty of aggravated child molestation (Count 2) and child molestation (Count 5) on K. E., and acquitted him of the remaining charges. The trial court sentenced him to serve 30 years on Count 2 and 20 years on Count 5, to be served consecutively; Cobb was sentenced as a recidivist and is therefore not eligible for parole.[5] The trial court denied Cobb's subsequent motion for new trial, and this appeal followed.

1. Cobb challenges the sufficiency of the evidence. This enumeration is without merit.

The testimony of K. E., standing alone, was sufficient to support the verdict.[6] "Moreover, to the extent that there were inconsistencies or conflicts in the evidence, a jury is authorized to believe or disbelieve all or any part of the testimony of witnesses, and it serves as the arbiter of conflicts in the evidence before it."[7] Viewed in support of the verdict, we conclude that the evidence was sufficient for the jury to find Cobb guilty beyond a reasonable doubt.[8]

2. Cobb argues that the trial court erred by allowing the State's expert, Dr. Battle, to testify that she did not believe that Michelle or Mark coached K. E. during the tape-recorded conversation with the child in which she relayed her allegations against Cobb.

Cobb did not object to the introduction of the testimony at trial,[9] and as a result, he has waived this argument.[10] Notwithstanding his

---

[5] See OCGA § 17-10-7 (a).

[6] See *Fogerty v. State*, 304 Ga. App. 546, 547 (1) (696 SE2d 496) (2010).

[7] (Punctuation omitted.) *Woods v. State*, 304 Ga. App. 403, 405 (1) (696 SE2d 411) (2010).

[8] See OCGA § 16-6-4 (a) (1), (c); *Woods*, 304 Ga. App. at 405 (1).

[9] We note that Cobb did not include a statement of the method by which his enumerations were preserved for appeal as required by Court of Appeals Rule 25 (a) (1).

[10] See *Mattox v. State*, 204 Ga. App. 750, 752 (3) (421 SE2d 97) (1992) ("It is well settled

waiver, however, this enumeration is without merit. As we have recently held, "[t]estimony by a witness that he did not see any evidence that the child victim had been coached did not constitute bolstering of the child's credibility and did not impermissibly address the ultimate issue."[11]

3. Cobb enumerates as error the trial court's refusal to allow him to cross-examine the State's expert, Dr. Battle, "regarding children's suggestibility to other children." We find no basis for reversal.

During the trial, outside the presence of the jury, Cobb's trial counsel proffered cross-examination testimony of Dr. Battle that Michelle left her ex-husband and father of her children because there were allegations made by C. L.'s older sisters that their father had sexually molested them. According to Dr. Battle, C. L. was one year old at the time, and "[t]here was no reason to believe" that C. L. was molested by her father at that time. Trial counsel also elicited testimony from Dr. Battle that it was possible that her older sisters discussed the abuse by their father in C. L.'s presence and that such conversation could have had an impact on C. L.'s future statements. When the State examined her during the proffer, Dr. Battle stated that she used the information about C. L.'s sisters' molestation allegations solely to help her evaluate C. L.'s credibility, and she found C. L. to be credible. Cobb's counsel then asked Dr. Battle, "Is it not true, Doctor, that children are impressionable and are more prone to suggestibility when speaking with other children?" At that point, the trial court ruled that it would not permit counsel to cross-examine Dr. Battle in the jury's presence regarding the testimony submitted during the proffer, relying on *House v. State*.[12]

In *House*, the defendant challenged the trial court's refusal to allow defense counsel to cross-examine the victim's older brother about alleged sexual abuse he suffered by his father, who was not the defendant, but was also the victim's father.[13] The alleged molestation by the father occurred six years before the defendant's trial, when the victim was one year old. The defendant argued at trial that such evidence was relevant to demonstrate that the victim may have had the opportunity to learn about sexual abuse by witnessing her brother's sexual abuse. We affirmed the trial court, holding:

The cases cited by the defendant in support of his attempt

---

that this court will not consider issues and grounds for objection which were not raised and passed upon in the trial court.") (punctuation omitted).

[11] (Citation and punctuation omitted.) *Vaughn v. State*, 307 Ga. App. 754, 759 (4) (706 SE2d 137) (2011). See also *Towry v. State*, 304 Ga. App. 139, 143-144 (2) (a) (695 SE2d 683) (2010).

[12] 236 Ga. App. 405 (512 SE2d 287) (1999).

[13] See id. at 410 (3).

to bring in evidence of past sexual abuse of the victim's brother by someone other than the defendant were cases in which defense counsel was allowed to introduce evidence of past sexual abuse by third parties of the young *victims* at issue in those cases. This evidence was utilized to demonstrate that the victims, who might normally be unaware of sexual practices and abuse, may have had the opportunity to learn about sexual abuse from a source other than the defendants, or that the victims may be exhibiting "Child Abuse Accommodation Syndrome," i.e., behavioral symptoms of abuse that were caused by sexual abuse by a third party. The defendant cites to no cases which support his proposition that he should be allowed to question a *child other than the victim about sexual abuse by a non-defendant* in order to demonstrate that the victim may have learned about sex by *witnessing* such abuse. This Court expressly disapproves of such questioning and finds that, under the circumstances of this case, such questioning is violative of the witness' privacy interests, unduly speculative, and irrelevant to the issue of whether the *defendant* molested *this specific victim.* This is particularly true when the molestation of the brother occurred when the victim was only one year old. There is no evidence in the record that the victim was aware of the brother's past sexual abuse, and it is extremely unlikely that a rational juror would find that the victim may have learned about sex from incidents which occurred when she was a mere infant.[14]

The rationale of the *House* decision is equally applicable here because Cobb has failed to point to any evidence that C. L. had knowledge of her sisters' previous abuse allegations, and she was one year old at the time of her sisters' abuse. Cobb argues that *House* is distinguishable because it prohibited cross-examination of the brother about prior sexual abuse, whereas here, Cobb sought to cross-examine an expert about the children's previous abuse. This distinction, however, does not render *House* inapposite because the rationale is equally applicable to this case.[15]

Cobb's argument that he was precluded from presenting evidence regarding suggestibility is equally unavailing.[16] There was

---

[14] (Citations omitted; emphasis in original.) Id. at 410-411 (3).

[15] We note that Cobb was acquitted of the charges against C. L. Thus, he has arguably failed to demonstrate that he was harmed by the exclusion of Dr. Battle's testimony regarding the molestation of C. L.'s older sisters by their father.

[16] Cobb points to the affidavit testimony of an expert that he introduced at his motion for

evidence that the children discussed their abuse by Cobb amongst themselves. And Cobb introduced his own expert, Dr. Nancy Copeland Aldridge, who specifically testified about "impressionability or suggestibility[, which] is that sometimes children begin to own what another child says and says yes, that happened to me too," and she discussed the applicability of the theory to the children in this case. Cobb repeatedly argued during his closing statement to the jury that C. L., K. E., Jo. E., and Ja. E. all "sat around in a room and volunteered stuff that was happening to them," and that the children "are all influencing one another," arguing that "[w]hen children are speaking with other children, they begin to adopt the stories and allegations made by the other child." Thus, Dr. Battle's testimony regarding suggestibility would have been merely cumulative of other evidence offered at trial, and its preclusion does not warrant reversal.[17]

4. Cobb also claims that he received ineffective assistance of counsel.

> To prevail on a claim of ineffective assistance, appellant must show that counsel's performance was deficient and that the deficient performance so prejudiced the client that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. We need not address both the deficient performance and prejudice prongs of the test if the defendant has made an insufficient showing on either prong. The trial court's finding that a defendant was afforded effective assistance of counsel must be upheld on appeal unless clearly erroneous.[18]

(a) Cobb contends that trial counsel was ineffective by failing to adequately prepare his expert, Dr. Aldridge, for the second trial. According to Cobb, Dr. Aldridge's testimony was "more favorable to the defense" in the first trial, and her testimony in the second trial "more than likely aided the State." Notwithstanding Cobb's characterization of the trial testimony, we find this argument unpersuasive. The first trial concluded on February 3, 2009, and the second trial began on March 9, 2009. Cobb has not shown that trial counsel would have had any reason to think that the expert's testimony

---

new trial, who stated that "expert testimony on a child's suggestibility to other children is necessary in order to assess the credibility of the child's accusations of sexual abuse."

[17] See *Stack-Thorpe v. State*, 270 Ga. App. 796, 800 (2) (608 SE2d 289) (2004).

[18] (Citations and punctuation omitted.) *Towry*, 304 Ga. App. at 143 (2). See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

would change in the month-long break between trials, nor has he demonstrated that additional preparation between the two trials would have somehow rendered Dr. Aldridge's testimony more favorable to the defense. Thus, Cobb has failed to establish deficient performance or prejudice.[19]

(b) Cobb maintains that his trial counsel should have impeached his wife, Teresa, with her previous admission in a letter to Cobb that she had encouraged her children to make false accusations against him and that she had a reason to appease the State because she had pending drug charges.

Teresa testified as a witness for the State in the first trial, and she admitted on cross-examination that she wrote a letter to Cobb while he was in jail confessing that "[she was] responsible for making all this up and making it happen." On re-direct, Teresa testified that she was "high" on methamphetamine when she wrote the letter, that she wrote it because Cobb convinced her that he had not abused the children and made her feel guilty, and she denied that she contrived the allegations or encouraged the children to lie. The State did not call Teresa as a witness during the second trial, and she was instead a witness called by the defense.

At the hearing on the motion for new trial, Cobb's two trial attorneys testified that they made a strategic decision not to raise the issue of the letter Teresa wrote to Cobb because her explanation for doing so was "very bad for the defense," explaining that testimony at the first trial "paint[ed] Mr. Cobb in a very negative light, and, in our opinion, garnered a whole lot of sympathy for Ms. Cobb and undercut perhaps the credibility or validity of that letter and just made it a whole can of worms that the second time around we weren't so comfortable getting into." Trial counsel's strategic decision was reasonable, and such "[a] strategic decision is not grounds for finding ineffective assistance."[20]

Cobb also claims that trial counsel was ineffective for failing to impeach Teresa with her pending claims in drug court to demonstrate a motive to testify in a manner favorable to the State. Cobb elicited testimony from Teresa that she previously struggled with substance addiction; she testified on cross-examination that her addiction lasted almost a decade and that she used "cocaine, crank, meth, acid, alcohol, pills, [and] marijuana." Teresa also admitted that she intended to divorce Cobb. Given these facts, we conclude that Cobb has failed to prove that he was prejudiced by trial counsel's

---

[19] See *Adesida v. State*, 280 Ga. App. 764, 766-767 (3) (c) (634 SE2d 880) (2006); see also *Mallon v. State*, 266 Ga. App. 394, 397-398 (3) (597 SE2d 497) (2004).

[20] (Punctuation omitted.) *McMichael v. State*, 305 Ga. App. 876, 877 (700 SE2d 879) (2010).

failure to impeach his own witness with evidence that she had pending charges in drug court.

(c) Cobb further argues that trial counsel was ineffective by failing to request rebuttal time following the State's closing statement. We disagree.

> Although the previous version of OCGA § 17-8-71 allowed a defendant who presented no evidence to open and conclude argument, the amended OCGA § 17-8-71, effective on July 1, 2005, provides that "after the evidence is closed on both sides, the prosecuting attorney shall open and conclude the argument to the jury."[21]

Thus, Cobb had no right to make a rebuttal argument. Failure to make a meritless motion does not constitute deficient performance.[22] Furthermore, Cobb has failed to specify what additional arguments trial counsel would have made in rebuttal, and therefore, he has failed to demonstrate prejudice.[23]

(d) Cobb further contends that trial counsel should have objected to the State's improper argument that he "had a compulsion to molest children, and that when his stepchildren were not available[,] he moved on to the neighborhood children."

In closing, the prosecutor argued that

> [Cobb] loved these children in his own sick, twisted way. He is not violent. He is not torturing them. He does to them what he thinks they want. . . . He is touching them, and he molests them. He does this because it is a compulsion for him. He has acted on it, and he can't stop. We know he won't stop because he moves on to [C. L.].

Cobb argues that the State's comment constituted an impermissible "future dangerousness" argument, relying on *Williams v. State*.[24]

Cobb is correct that it is highly "improper for a prosecutor to argue during the guilt-innocence phase of a criminal trial that if found

---

[21] (Punctuation omitted.) *Newman v. State*, 286 Ga. App. 353, 356-357 (4) (649 SE2d 349) (2007).

[22] See *Griggs v. State*, 303 Ga. App. 442, 446 (4) (a) (693 SE2d 615) (2010).

[23] See *McKenzie v. State*, 284 Ga. 342, 347 (4) (b) (667 SE2d 43) (2008) ("because [defendant] provides no basis for concluding that the result of his trial would have been different if he had last closing argument, he has not shown that his trial counsel was ineffective in this regard").

[24] 261 Ga. App. 511 (583 SE2d 172) (2003).

not guilty, a defendant poses a threat of future dangerousness."[25] We conclude that the prosecutor's comments, however, when read as whole, do not constitute a warning to the jury regarding Cobb's future actions if he remained free, but instead constitute a comment on the evidence, including Cobb's molestation of the similar-transaction victim, C. L.[26] Even if the argument did violate the prohibition against future-dangerousness arguments by the State, we conclude that "it is highly unlikely that this single portion of the prosecutor's closing argument contributed to the guilty verdict," given the evidence presented, including the testimony of K. E.[27]

(e) Cobb further contends that trial counsel was ineffective by failing to object to the State's comment during closing argument regarding the experts' opinion of the children's credibility. Specifically, Cobb argues that the following portion of the State's argument was improper:

Prosecutor: When children go through one interview, as the three told you, when they have suspicions, they go to law enforcement after that interview and say, you know, there's an issue here. Every expert that you heard from said the children did not seem to have been coached and did not seem to be testifying about false —

Defense counsel: Objection, Your Honor.

The Court: Overruled.

Prosecutor: They seemed to have specific, appropriate details and memories. They seemed to be talking about actual memories. Every expert told you that. The experts also told you that they did see sometimes cases where children appeared to be coached. Absolutely that happens. Not in

---

[25] *Hines v. State*, 248 Ga. App. 752, 756 (3) (548 SE2d 642) (2001).

[26] Compare *Mason v. State*, 274 Ga. 79, 79-80 (2), n. 2 (548 SE2d 298) (2001) (trial counsel was deficient for failing to object to the prosecutor's argument that the defendant "must be stopped. It's apparent that he's not going to do it unless you stop him. . . . Stop him before someone else in our community is Mr. Mason's victim. Please, please stop him."); *Wyatt v. State*, 267 Ga. 860, 864-865 (2) (b) (485 SE2d 470) (1997) (prosecutor's argument that the defendant could "do it again, get his gun back, and ride down on the elevator with the jury as they leave the courthouse" constituted an improper comment on future dangerousness); *Williams*, 261 Ga. App. at 515-516 (3) (conviction reversed because prosecutor repeatedly suggested to the jury that if the defendant were not convicted, "something bad" like the Columbine tragedy could happen); *Nickerson v. State*, 248 Ga. App. 829, 831-832 (2) (a) (545 SE2d 587) (2001) (improper for the prosecutor to argue to the jury that the defendant, who was charged with sex crimes, was a "predator," who previously was on probation for a similar offense and "did it again," and implored the jury to "bring the predator to an end" and stop "the nightmares").

[27] *Mikell v. State*, 281 Ga. App. 739, 745 (3) (c) (637 SE2d 142) (2006). See also *Murray v. State*, 297 Ga. App. 571, 573 (1) (677 SE2d 745) (2009).

this case. We don't believe all children. We believe these five children.

Cobb contends that "the experts testif[ied] that they found the children to be credible." Cobb does not, however, provide a record citation(s) for this contention, and we have not found any such testimony in our review of the record. Given that no expert so testified, we cannot conclude with any certainty that the prosecutor's comment that, "We don't believe all children. We believe these children," necessarily referred to the experts' beliefs. Instead, the prosecutor was simply arguing that the jury should believe the child witnesses were testifying truthfully.

It is well settled that

[a]s a general rule, prosecutors are granted wide latitude in conducting closing argument, and defining the bounds of such argument is within the trial court's discretion. This wide latitude encompasses the prosecutor's ability to argue reasonable inferences raised by the evidence. Accordingly, it is proper for a prosecutor to urge the jury to draw inferences from the evidence regarding the credibility of witnesses.[28]

Under these circumstances, we conclude that Cobb has not demonstrated that trial counsel's failure to object to the above comment during the prosecutor's closing argument constitutes deficient performance, nor has he shown that there was a reasonable probability that the outcome of the case would have been different but for the purported deficient performance of trial counsel.[29]

(f) Although not specifically enumerated as error, Cobb states that "the cumulative effect of all of the trial counsel's errors deprived [him] of a fair trial."

As discussed above, [Cobb] has failed to substantiate that his trial counsel was deficient in many of the respects alleged and has failed to show prejudice resulting from any of his claims of ineffective assistance. We conclude that, even considered cumulatively, the alleged errors of [Cobb's] trial counsel did not rise to the level of ineffective assistance of counsel.[30]

---

[28] (Citations and punctuation omitted.) *Brown v. State*, 293 Ga. App. 633, 637-638 (1) (d) (ii) (667 SE2d 899) (2008).

[29] See id.

[30] *Towry*, 304 Ga. App. at 148 (2) (h).

*Judgment affirmed. Ellington, C. J., and Andrews, J., concur.*

DECIDED MARCH 16, 2011 —
RECONSIDERATION DENIED MARCH 31, 2011 — 

*Sheueli C. Wang*, for appellant.
*Lee Darragh, District Attorney, Wanda L. Vance, Assistant District Attorney*, for appellee.