A10A1293. JOHNSON v. THE STATE.
(700 SE2d 726)

POPE, Senior Appellate Judge.

Following a jury trial, Gerry Wendell Johnson was convicted on two counts of armed robbery, one count of aggravated assault, and one count of possession of a firearm during the commission of a crime. The trial court merged the two counts of armed robbery for sentencing purposes. Johnson argues on appeal that his conviction on aggravated assault should have also been merged into the armed robbery conviction; that the trial court erroneously admitted similar

transaction evidence based upon hearsay testimony; and that his counsel rendered ineffective assistance. We find no error and affirm.

On appeal from a criminal conviction, we view the evidence in the light most favorable to uphold the jury's verdict. *Hill v. State*, 298 Ga. App. 677 (1) (680 SE2d 702) (2009). We do not reweigh the evidence or judge witness credibility; rather, we determine only whether the evidence was sufficient for a rational trier of fact to conclude that the defendant committed the crimes charged beyond a reasonable doubt. Id. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

So viewed, the evidence presented at trial showed that on the night in question, Johnson had smoked copious amounts of crack cocaine with a female friend. Desiring more cocaine but having no more money, Johnson directed his female friend to drive him to the home of the victim, a 71-year-old man, whom Johnson had known for many years. As the friend waited in the car, she observed Johnson knock on the door of the victim's residence. When the victim opened the door, Johnson entered and asked the victim if he had any money. The victim answered in the negative, at which time Johnson grabbed him, "put something to [his] neck," and said, "[t]his is a robbery." A struggle ensued, during which the victim attempted to retrieve his sawed-off shotgun from the floor nearby. The victim then received a powerful blow to his head and was rendered unconscious.

Johnson's female friend, who also knew the victim, heard "a grunt" and "a thud" and then observed Johnson run from the victim's residence, enter her car, and order her to "go, go, go." As she drove, the friend inquired as to what had happened, but Johnson responded only that he did not want her to get involved. The female friend then noticed both a knife covered in blood and the victim's sawed-off shotgun sitting on the floorboard between Johnson's feet. She also observed Johnson taking money out of the victim's wallet, which she identified by seeing the victim's license and credit cards. As they drove, Johnson threw the victim's wallet into the woods and later threw the shotgun out of the car window. The female friend took Johnson to the home of a mutual acquaintance who also knew the victim, then waited anxiously as the acquaintance attempted to call the victim's home numerous times but received no answer.

When the victim regained consciousness, he was taken to the local emergency room. It was determined that he suffered from a subarachnoid hemorrhage caused by blunt force trauma, a fractured cheekbone, a fractured eye socket, a laceration in his head requiring six stitches, and two additional puncture wounds on his skull. The physician's assistant who treated the victim testified that the blunt force injury and bone fractures on his head and face were consistent with being hit with a gun barrel, and the laceration on his head may

have been caused by a knife.

Believing that Johnson had killed the victim, the female friend contacted law enforcement authorities the following morning to report the above events. The responding officer retrieved the bloody knife from the floor of the vehicle in which Johnson and his friend had been riding. The female friend also took the officer to the location in the woods where Johnson threw the victim's wallet, and the officer recovered two blank checks belonging to the victim. The officer then located and interviewed the victim in the hospital, where the victim immediately named Johnson as the man who had attacked him.

1. Although not enumerated as error, the above evidence was sufficient to sustain Johnson's convictions on armed robbery, aggravated assault, and possession of a firearm during the commission of a crime. See OCGA §§ 16-5-21 (a) (2); 16-8-41 (a); 16-11-106 (b) (1); *Jackson*, 443 U. S. 307.

2. Johnson contends that his armed robbery conviction and his aggravated assault conviction should have merged. We disagree.

Under the doctrine of merger, a criminal defendant cannot be subject to the imposition of multiple punishment when the same conduct establishes the commission of more than one crime. See OCGA § 16-1-7 (a); *Drinkard v. Walker*, 281 Ga. 211, 212-213 (636 SE2d 530) (2006). The doctrine of merger does not apply, however, if the multiple convictions are not premised upon the same conduct. See *Drinkard*, 281 Ga. at 212-213, 216; *McKenzie v. State*, 302 Ga. App. 538, 539 (1) (a) (691 SE2d 352) (2010); *Goss v. State*, 289 Ga. App. 734, 738 (3) (658 SE2d 168) (2008).

Count 1 of the indictment charged Johnson with armed robbery, in that he

> did unlawfully[,] with the intent to commit theft[,] take property, to-wit: United States currency and a wallet, from the immediate presence of ·[the victim], by use of an offensive weapon, to wit: a shotgun[.]

See OCGA § 16-8-41 (a). Count 3 of the indictment charged Johnson with aggravated assault, in that he

> did unlawfully make an assault upon the person of [the victim], a person over the age of 65 years, with a deadly weapon, to wit: a shotgun and *a knife*, which, when used offensively against another person is likely to and did result in serious bodily injury, by striking and *cutting* said [victim].

(Emphasis supplied.) See OCGA § 16-5-21 (a) (2).

Johnson's conviction on Count 1, armed robbery, can be sustained based upon his conduct with the shotgun. His conviction on Count 3, aggravated assault, on the other hand, can be sustained based upon his conduct with the knife. See *Carrell v. State*, 261 Ga. App. 485, 486 (1) (583 SE2d 167) (2003) ("It is sufficient for the State to show that a crime was committed in any one of the separate ways listed in the indictment, even if the indictment uses the conjunctive rather than disjunctive form.") (citation and footnote omitted). Although the victim was unable to identify exactly which weapon Johnson used to inflict which injuries, the circumstantial evidence presented authorized the jury to conclude that Johnson initially held a knife to the victim's throat and cut the victim's head with the knife during the ensuing struggle. The jury was further authorized to conclude that the victim's blunt force injuries were inflicted by the butt of the shotgun once Johnson became aware of its existence. It follows that the two convictions do not merge. See *Chalifoux v. State*, 302 Ga. App. 119 (690 SE2d 262) (2010); *McKenzie*, 302 Ga. App. at 539-540 (1) (a); *Goss*, 289 Ga. App. at 738-739 (3) (a), (b).

3. Johnson further argues that the trial court erred in admitting hearsay related to similar transaction evidence over the objection of his trial counsel. During its case-in-chief, the state submitted certified copies of a series of previous armed robberies and aggravated assaults to which Johnson had pled guilty pursuant to a single indictment in 1992. In order to establish the similarities between the present and the prior crimes, the state presented the testimony of the lead investigator who was responsible for investigating each of the previous incidents. According to Johnson, the investigating officer's testimony included inadmissible hearsay that had allegedly been read directly from the police reports of the various crimes.

As an initial matter, we note that the record does not contain copies of the police reports from which the lead investigator is alleged to have read, and therefore we cannot establish to what extent that actually happened. Regardless, given the overwhelming evidence against Johnson in this case, it is highly probable that the challenged testimony did not contribute to the guilty verdict, and its admission, even if erroneous, was therefore harmless. See generally *Duvall v. State*, 305 Ga. App. 545, 547 (3) (699 SE2d 761) (2010); *Moore v. State*, 242 Ga. App. 249, 250-251 (1) (a) (529 SE2d 381) (2000); *Bowdry v. State*, 211 Ga. App. 626, 627 (440 SE2d 59) (1994).

4. Finally, Johnson contends that his trial counsel rendered ineffective assistance for allegedly failing to object to the challenged similar transaction evidence discussed in Division 3. Johnson's argument, however, is belied by the record. The transcript shows that his counsel moved to exclude the similar transaction evidence prior to trial, renewed his objection to the admission of the evidence

during the trial, sought and received a continuing objection to all lines of questioning related to the evidence throughout the trial, and specifically lodged an objection on hearsay grounds to the investigating officer's testimony at the time it was being offered. It follows that Johnson has failed to carry his threshold burden of demonstrating that his counsel's performance was deficient, which is fatal to his claim of ineffective assistance. See *Coats v. State*, 303 Ga. App. 818, 824-825 (3) (695 SE2d 285) (2010); *Carson v. State*, 286 Ga. App. 167, 169-170 (2) (648 SE2d 493) (2007).

*Judgment affirmed. Barnes, P. J., and Senior Appellate Judge G. Alan Blackburn concur.*

DECIDED SEPTEMBER 7, 2010.

*William J. Mason*, for appellant.
*Julia F. Slater, District Attorney, Jennifer E. Dunlap, Assistant District Attorney*, for appellee.