S11A0303. JOHNSON v. THE STATE.

(713 SE2d 376)

NAHMIAS, Justice.

Lyndon B. Johnson, Jr., appeals his convictions for felony murder and other crimes in connection with the shooting death of Brandon Todd. For the reasons that follow, we affirm.[1]

1. The evidence at trial, viewed in the light most favorable to the verdict, showed the following. Johnson and Jimmy Teemer met the victim in the parking lot of a motel in Albany, Georgia. The victim revealed that he was traveling alone, and Johnson and Teemer decided to rob him. They went to a motel room occupied by co-defendant Patrick Jackson and his girlfriend, Shantoria Martin, and told them of the plan. Jackson gave Teemer a .22 caliber handgun and a black shirt that Teemer wore over his head during the robbery. Johnson changed clothes, leaving his brown jumpsuit in the room. Martin later testified against Johnson at trial.

Both Teemer and the victim were soon found dead from gunshots — the victim in his motel room, with a Glock pistol on the floor

---

[1] The crimes occurred on November 29, 2007. On December 17, 2008, a Dougherty County grand jury indicted Johnson for felony murder predicated on aggravated assault and/or conspiracy to commit armed robbery, aggravated assault with a deadly weapon, aggravated assault with intent to rob, possession of a firearm during commission of a felony, and conspiracy to commit armed robbery. On January 16, 2009, Johnson was convicted of all charges after a five-day trial. The trial court sentenced Johnson to life in prison for felony murder plus five years consecutive for the firearm conviction, and the other convictions merged. On February 2, 2009, Johnson filed a motion for new trial, which he amended on February 15, 2010. The trial court summarily denied the motion on September 17, 2010, and Johnson filed a timely notice of appeal. The case was docketed in this Court for the January 2011 term and submitted for decision on the briefs.

next to him, and Teemer in some bushes nearby, with a .22 pistol lying near him. Later that night, Johnson told a friend that he and Teemer were "fixing to go hit a lick" (slang for armed robbery) when their plan went awry and Teemer was killed. The friend relayed this information to the police and later testified against Johnson at trial.

The day after the shooting, Johnson spoke to the police at the urging of family members. He first denied any involvement in the shootings, but he soon changed his story. Johnson admitted that he and Teemer met the victim in the motel parking lot. Teemer said that he wanted to "get" the victim, and he and Teemer went to Jackson and Martin's room at the motel to obtain a gun. Johnson then went to the victim's room with Teemer and knocked on the door while Teemer stood to the side with a shirt pulled over his head. When the victim answered, Johnson asked if he could use the telephone. The victim opened the door to let Johnson in, and Teemer rushed past Johnson into the room and pointed his gun at the victim, who was also armed. Johnson claimed that he turned and fled, hearing multiple gunshots as he ran away. Johnson's statement to the police was admitted against him at trial.

Johnson contends that the State failed to prove that he possessed the intent required to commit the predicate felonies for the felony murder conviction. See *Holliman v. State*, 257 Ga. 209, 210 (356 SE2d 886) (1987) ("Felony murder ... require[s] that the defendant possess the requisite criminal intent to commit the underlying felony."). That is not so. Aggravated assault with a deadly weapon requires proof of intent to inflict injury or to do an act that places another in reasonable apprehension of immediate violent injury using a deadly weapon. See OCGA §§ 16-5-20 (a) (1)-(2) (defining assault), 16-5-21 (a) (2) (defining aggravated assault to include an assault with a deadly weapon); *Guyse v. State*, 286 Ga. 574, 576-577 (690 SE2d 406) (2010). Aggravated assault with intent to rob requires proof of a specific intent to rob, as does conspiracy to commit armed robbery. See *Lucky v. State*, 286 Ga. 478, 482 (689 SE2d 825) (2010) (explaining that armed robbery and aggravated assault with intent to rob both require proof of intent to rob). See also OCGA §§ 16-4-8 (defining conspiracy), 16-8-41 (defining armed robbery), 16-5-21 (a) (1) (defining aggravated assault with intent to rob).

When viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to conclude that Johnson, with Teemer as his co-party and co-conspirator, intended to rob the victim using a deadly weapon (the handgun they got from Jackson), that the victim was reasonably apprehensive of receiving a violent injury as a result of their intentional acts, and that Johnson was guilty beyond a

reasonable doubt as a party to the crimes for which he was convicted. See *Jackson v. Virginia*, 443 U. S. 307, 319 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 16-2-20 (defining parties to a crime). See also *Vega v. State*, 285 Ga. 32, 33 (673 SE2d 223) (2009) (" 'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.' " (citation omitted)).

2. Johnson contends that the trial court erred in admitting his incriminating statement. We disagree.

Prior to trial, the court held a hearing to determine the admissibility of Johnson's statement to the police. See *Jackson v. Denno*, 378 U. S. 368, 380 (84 SC 1774, 12 LE2d 908) (1964). The interview was videotaped, and the court reviewed a transcript of the interview and portions of the videotape. The court also heard testimony from one of the two officers who interviewed Johnson and reviewed a waiver of rights form that Johnson signed. The court found that Johnson was 18 years old at the time of the interview and had an 11th grade education; that no promises or threats were made to him; that the officers advised Johnson of his *Miranda* rights and that he understood his rights; that he had discussed the decision to speak to the police with the people most important to him; and that his statement was voluntary. The court also found that the officers' use of trickery and deceit — claiming that they had a videotape and fingerprint evidence placing Johnson at the crime scene — was not calculated to procure an untrue statement. See *Harris v. State*, 274 Ga. 422, 424 (554 SE2d 458) (2001).

On appeal, we will accept the trial court's factual findings and credibility determinations regarding the admissibility of a defendant's statement unless the record shows them to be clearly erroneous. See *Bright v. State*, 265 Ga. 265, 280 (455 SE2d 37) (1995). The record here fully supports the court's finding that Johnson's statement was voluntary and that he was advised of but did not invoke his right to counsel or his right to remain silent until well into the interview, which the officers then properly ended. Accordingly, the trial court did not err in admitting Johnson's statement into evidence.

3. After the jury was impaneled and sworn, the State received information that a juror had failed to answer questions correctly during voir dire and moved to strike the juror and have an alternate juror seated. The juror was questioned by the court and counsel for both parties. She admitted — contrary to her answers during voir dire — that she had been arrested for hindering the apprehension of a felon and that her son was on probation and also had charges pending against him by the district attorney's office that was prosecuting this case. Although she claimed to have misunderstood the voir dire questions, the court granted the State's motion to

remove the juror, and an alternate juror was seated in her place. Johnson contends that the trial court erred in dismissing the juror.

However, OCGA § 15-12-172 vests trial courts with broad "discretion to discharge a juror and replace him or her with an alternate at any time (as long as the court) has a sound legal basis." *Brooks v. State*, 281 Ga. 14, 18 (635 SE2d 723) (2006) (citations and punctuation omitted). It is not an abuse of that discretion to remove a juror who fails during voir dire to provide accurate information that the State has a legitimate right to know. See, e.g., *Suits v. State*, 270 Ga. 362, 366 (507 SE2d 751) (1998) (finding no abuse of discretion in removal of a juror after voir dire where the juror failed to respond when the prospective jurors were asked if they had ever been arrested and the State later discovered that the juror had in fact been arrested). Accordingly, this enumeration of error lacks merit.

4. At trial, the State asked the police officer who responded to the motel what the man staying in the room next to the victim's room had said to the officer. As the officer started to answer, Johnson interrupted with a hearsay objection. The State argued that the objection should be overruled because the victim's neighbor at the motel was "here and available to testify, and he's available for cross-examination." The court overruled the objection. The officer then testified that the victim's neighbor said he was asleep in his room when he was awakened by what sounded like struggling and banging on the walls between his room and the victim's room before he heard four or five gunshots come from the same area.

Johnson contends that the trial court erred in overruling his hearsay objection. The State defends the court's ruling using the following logic: (1) the victim's neighbor later testified at trial and was subject to cross-examination; (2) this Court held in *Cuzzort v. State*, 254 Ga. 745 (334 SE2d 661) (1985), that a witness's prior consistent statements made out of court are admissible as substantive evidence where the witness's veracity is at issue; and (3) the victim's neighbor's veracity was at issue because the substance of what he told the officer — that he heard a scuffle in the room next door and then gunshots — was "part of the determination that the fact finder had to make." However, since our decision in *Cuzzort*, we have explained that " '(u)nless a witness's veracity has *affirmatively* been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury.' " *Blackmon v. State*, 272 Ga. 858, 859 (536 SE2d 148) (2000) (citation omitted; emphasis added). We have further explained that "a witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised

during cross examination." *Woodard v. State*, 269 Ga. 317, 320 (496 SE2d 896) (1998). Indeed, *Woodard* squarely rejected the State's logic, holding that *"Cuzzort* has been improperly construed to permit the admission per se of a witness's prior consistent statement — regardless of whether the witness's veracity actually has been called into question during cross-examination," and overruling cases applying that faulty interpretation. *Woodard*, 269 Ga. at 319, n. 14 (citations omitted).

The State does not claim that Johnson made affirmative charges of recent fabrication, improper influence, or improper motive in his cross-examination of the victim's motel neighbor. The officer's testimony about what the victim's motel neighbor said to him, which came before that witness took the stand, was not a prior consistent statement under our case law; it was hearsay. See *Woodard*, 269 Ga. at 321. Accordingly, the trial court erred in overruling Johnson's hearsay objection.

Nevertheless, the trial court's error would require reversal of Johnson's convictions only if it appears likely that it contributed to the verdict. See *Woodard*, 269 Ga. at 324. The victim's neighbor did testify, and his testimony repeated and expanded on his prior statements the officer had recounted. Moreover, Johnson did not seriously dispute — nor could he, in light of his own statement to the police and the other evidence at trial — that there was a struggle in the victim's room followed by multiple gunshots. And the witness did not mention Johnson or place him at the crime scene. It is clear, therefore, that any improper bolstering of the victim's neighbor's testimony by the officer's hearsay testimony had no real effect on Johnson's convictions, and so the error was harmless.

5. Johnson contends that the trial court erred in admitting a close-up crime scene photograph of the victim that showed aspirated blood on his face, claiming that the photo was irrelevant and inflammatory. However, the court did not abuse its discretion because the photo was " 'relevant and material to the identity of the victim, the location of the victim's body, the location of certain physical evidence at the scene, and the location and nature of the victim's wounds.' " *State v. Simmons*, 282 Ga. 183, 187-188 (646 SE2d 55) (2007) (citation omitted). Moreover, even if the photo was somewhat duplicative and unnecessary, there was no harm because of Johnson's incriminating admissions and the other strong evidence of his guilt. See *Williams v. State*, 250 Ga. 553, 561 (300 SE2d 301) (1983) (finding the trial court's erroneous admission of a duplicative and inflammatory autopsy photo harmless in light of the defendant's incriminating admissions and other evidence of his guilt).

6. Johnson asserts that the trial court erred in admitting the brown jumpsuit the police obtained from the motel due to the lack of

proof of a chain of custody showing that it was Johnson's. But such proof was unnecessary because the jumpsuit was a "distinct physical object easily identifiable by observation, and was not a fungible item." *Bishop v. State*, 271 Ga. 291, 294 (519 SE2d 206) (1999). Martin identified the jumpsuit at trial as the one she saw Johnson change out of on the night of the murder, and the police officer who searched Martin's room said that she saw the jumpsuit admitted at trial lying across the bed in the room.

*Judgment affirmed. All the Justices concur.*

DECIDED JULY 5, 2011.

*Kevin C. Armstrong*, for appellant.

*Gregory W. Edwards, District Attorney, Kimberly M. Westley, Cania Brown-Gordon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Benjamin H. Pierman, Assistant Attorney General*, for appellee.