## A11A1438. DONALD v. THE STATE.
(718 SE2d 81)

DOYLE, Judge.

Marquet Sherman Donald was charged with one count of burglary, three counts of armed robbery, three counts of aggravated assault, four counts of possession of a firearm during the commission of a crime, three counts of false imprisonment, two counts of aggravated assault on a police officer, and one count of theft by taking. A Clayton County jury found him not guilty of the two counts of aggravated assault on a police officer, not guilty of one count of aggravated assault, and guilty of the remaining charges. Donald appeals following the denial of his motion for new trial, arguing that (1) the evidence was insufficient to support his conviction beyond a reasonable doubt; (2) the trial court erred by admitting hearsay evidence; (3) the trial court erred by admitting identification evidence for which there was no foundation; and (4) he received ineffective assistance of counsel. We affirm, for reasons that follow.

> When reviewing a challenge to the sufficiency of the evidence, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury, not this Court, resolves conflicts in the testimony, weighs the evi-

---

dence, and draws reasonable inferences from basic facts to ultimate facts. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[1]

So viewed, the record shows that on July 3, 2008, Sherada Thompson, Justin Jones, and Cheryl Alphabet were working the night shift at a fast food restaurant in Clayton County and preparing to close for the night. At approximately 1:30 a.m., Jones exited the restaurant through the rear emergency door, dumped out a bucket of mop water, and went back inside the restaurant without fully latching the door. Thompson heard "a big bang" coming from the back of the restaurant, and when she and Jones went to investigate the sound, they found Alphabet lying on the floor. Standing in the rear of the restaurant was a man wearing a black ski mask, gloves, and sunglasses and holding a gun. The man forced Jones into the restaurant's office and closed the door. Using his cell phone, Jones quickly called his brother, Allen, and told him that the restaurant was being robbed.

Meanwhile, the gunman ordered Thompson and Alphabet to the front of the restaurant, where he ordered Alphabet to retrieve money from the cash registers and put it into trash bags. Next, the gunman forced Thompson and Alphabet into the walk-in cooler and forced Jones into the freezer. After another five or ten minutes, the gunman transferred Thompson and then Alphabet from the cooler into the freezer with Jones, demanding the women's cell phones and commenting that Alphabet had a new phone. The gunman then pointed his weapon at Alphabet's face and demanded the keys to her red Pontiac Sunfire, which was parked outside the restaurant, after which he forced her to exit the freezer. After a few minutes, Thompson heard "tussling and ruffling around," and Jones heard a slam, Alphabet scream, and then a gunshot. Ten to fifteen minutes later, Thompson and Jones exited the freezer, by which time the police had already arrived.

Meanwhile, when Jones's brothers, Allen and Edward, received the call from Jones regarding the robbery, they sped to the restaurant, which was a short distance from their location. While en route, they called 911 and advised the police about the robbery. When they arrived, they observed a man behind the restaurant sitting in a car with a door open. The brothers asked the man where Jones and Alphabet were, and he responded that the restaurant was closed. When the brothers told the man that Jones had called and reported

---

[1] (Citation and punctuation omitted.) *Dockery v. State*, 309 Ga. App. 584, 585 (711 SE2d 100) (2011). See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

the robbery, he said, "[H]old on for a minute, the store is closed, they'll be out in short, they'll be out shortly." As Edward jumped out of the car and approached him, the man "reach[ed] for something, like he was going to pull something out." Before he was able to retrieve the item, police arrived on the scene, and the man sped away in his car.

When Officer John Ivey arrived at the restaurant, he saw a red Pontiac Sunfire accelerate and exit the parking lot. Ivey saw Allen, Edward, and the other occupants of their car yelling and pointing at the Pontiac, saying "that was the guy." Police entered the restaurant and found Alphabet, who was struggling for breath and bleeding from gunshot wounds to her head and arm.

Meanwhile, Sergeant John Stephens pursued the Pontiac behind a grocery store, where he observed the driver jump out of the car while it was in motion; the driver had a bag in his hand, which he dropped when the car door knocked him down. The suspect eluded Stephens and ran toward the woods, where he then ran directly in front of Officer Matt Whitton's patrol car. Whitton chased after him on foot until the suspect dropped to the ground in a ditch below the officer. Whitton identified himself as a police officer, advised the suspect that he was under arrest, drew his gun, and approached the suspect. The suspect then grabbed the barrel of the officer's gun, and with Whitton's finger on the trigger, the gun discharged, hitting the officer in the arm. As the two men continued to fight, the suspect attempted to manually chamber another round, but was unsuccessful. Whitton was finally able to wrestle the gun from the suspect, who ran off, and Whitton called for assistance from his patrol car.

Additional police responded to the scene, and a K-9 unit began searching for the suspect. The K-9 dog quickly located a cell phone, a tactical flashlight, and two shirts — a dark one and a lighter one — which appeared to have been removed simultaneously, and another white shirt, which was covered with blood. Police also recovered a white plastic trash bag containing money and a pink bandana behind the grocery store, and they found a gun and gloves in the car abandoned by the suspect. After Donald turned himself in later that day, police took swabs of the "vast amount of dried blood" found on his chest, neck, and fingernails, which blood the crime lab later determined matched Whitton's DNA.

At trial, Thompson testified that during the robbery she told Alphabet that she thought Donald was the perpetrator, based on the shape of his head, which she described as "distinct," the shape of his eyes, his voice, and the fact that he knew that Alphabet had a new cell phone. Donald had previously worked with Thompson at the restaurant, but was fired after an altercation with a co-worker approximately five days before the robbery; after his termination,

Donald told Thompson that he was mad and that he was "trying to do something to [the general manager because] . . . he just felt the grounds of him getting fired wasn't right [sic]." Thompson also identified Donald at trial as the assailant.

During his testimony, Jones identified Donald as the perpetrator based on Donald's build and his "little funny shape[d] head, a little egg head." Jones's brothers, Allen and Edward, identified Donald from a photographic lineup and at trial as the man they encountered outside the restaurant. Finally, Whitton identified Donald in a photographic lineup and at trial as the man he chased and with whom he struggled.

Donald's girlfriend, Heather Shaw, testified that Donald was with her at her house around midnight on the night of the robbery; her house is located within walking distance of the restaurant. Donald left her house and returned the next morning wearing only pants and no shirt. Shaw testified that Donald told her that he shot Alphabet, "but he didn't mean to do it." Ricky Gousha, Donald's friend from high school, testified that Donald called him at 7:00 the morning after the robbery and asked him to say that Donald was at his house the night of the robbery, but Gousha refused.

At trial, Donald testified that he was fired from the restaurant after he got into an altercation with a male co-worker, during which he pushed the co-worker and Alphabet, who was also working at the time. Donald admitted that he was "angry" following his termination, but denied that he plotted revenge or retaliation. Donald denied committing the robbery, suggesting instead that he "was set up" by another fired employee. Donald testified that his own blood was on his chest and hands when he turned himself in, stating that his girlfriend hit him on his chest and hands the night of the robbery with "a rugged stick" after she became jealous. When asked to explain why the blood matched Whitton's DNA, Donald replied, "that's a phony." Finally, Donald admitted that the gun the police recovered from the red Pontiac after the robbery looked like a gun that he owned, but explained that he had been storing his gun in a storage shed at the restaurant.

The jury found Donald not guilty of the two counts of aggravated assault against Whitton, not guilty of one count of aggravated assault against Jones, and guilty of the remaining charges. Donald's subsequent motion for new trial was denied, and this appeal followed.

1. Donald argues that the evidence was insufficient to support his convictions. We disagree.

The evidence, including the testimony of Jones, Thompson, Jones's brothers, Shaw, Whitton, and the other police officers, as well as items recovered from the path of Donald's flight from police was

sufficient to support his convictions. Donald's challenge to the sufficiency of the evidence is without merit.[2]

2. Donald contends that the trial court erred by permitting Ivey to testify, over objection, that Thompson told him she believed Donald was the perpetrator, arguing that Ivey's testimony constituted inadmissible hearsay intended to bolster Thompson's testimony.

Our Supreme Court has explained that

> unless a witness's veracity has *affirmatively* been placed in issue, the witness's prior consistent statement is pure hearsay evidence, which cannot be admitted merely to corroborate the witness, or to bolster the witness's credibility in the eyes of the jury. . . . [A] witness's veracity is placed in issue so as to permit the introduction of a prior consistent statement only if affirmative charges of recent fabrication, improper influence, or improper motive are raised during cross examination.[3]

Here, the trial court overruled Donald's objection "because there were attacks . . . on credibility and so forth. . . ." Our review of the record indicates that Donald successfully attacked inconsistencies between Thompson's trial testimony and her written statement regarding whether the assailant initially forced her into the cooler or the freezer. Pretermitting whether this constituted an affirmative claim by Donald of "recent fabrication, improper influence, or improper motive in his cross-examination of [Thompson],"[4] Donald has failed to establish that Ivey's testimony contributed to the verdict. During direct examination, Thompson testified that during the robbery she told Alphabet she thought the assailant was Donald, and she also identified him at trial. And, given the other evidence of Donald's guilt, including his admission to Shaw that he shot Alphabet, the testimony of Jones's brothers and Whitton, and Whitton's blood found on Donald the following day, "[i]t is clear . . . that any improper bolstering of [Thompson's] testimony by the officer's hearsay testimony had no real effect on [Donald's] convictions, and

---

[2] See *Jackson*, 443 U. S. at 319 (III) (B); *Johnson v. State*, 305 Ga. App. 838, 840 (1) (700 SE2d 726) (2010); OCGA §§ 16-7-1 (a) (burglary); 16-8-41 (a) (armed robbery); 16-5-21 (a) (1), (2) (aggravated assault); 16-11-106 (b) (possession of a firearm during the commission of a crime); 16-5-41 (a) (false imprisonment); and 16-8-2 (theft by taking).

[3] (Citation and punctuation omitted; emphasis in original.) *Johnson v. State*, 289 Ga. 498, 501-502 (4) (713 SE2d 376) (2011).

[4] Id. at 502 (4).

so the error was harmless."[5]

3. Donald argues that the trial court erred by admitting Thompson's identification of Donald because it was speculative and without foundation, pointing out that the assailant's face was completely covered with a ski mask. This argument is without merit.

Thompson, who had worked previously with Donald, testified that she identified him based on the shape of his head, his voice, and his comment that Alphabet's cell phone appeared to be new. This evidence was sufficient to support Thompson's identification.[6]

4. Finally, Donald argues that he received ineffective assistance of counsel.

> In evaluating a claim of ineffective assistance of counsel, we apply the two-prong test set forth in *Strickland v. Washington*.[7] [Donald] must show that counsel's performance was deficient and that, but for that deficient performance, there is a reasonable probability that the outcome of his trial would have been different. In evaluating the first prong of this test, a strong presumption exists that counsel's conduct falls within the broad range of professional conduct. On appellate review of the trial court's ruling, we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.[8]

(a) Donald contends that his trial counsel rendered ineffective assistance by eliciting testimony from Thompson during cross-examination that Donald had been fired and was angry.

At the motion for new trial, trial counsel testified that he thought the State would introduce evidence regarding Donald's

---

[5] Id. See also *Character v. State*, 285 Ga. 112, 120 (6) (674 SE2d 280) (2009) (error in admitting prior consistent statement in absence of affirmative charges of improper motive, improper influence, or recent fabrication was harmless); *Blackmon v. State*, 272 Ga. 858, 859 (2) (536 SE2d 148) (2000) (even assuming that trial court erroneously admitted a witness's prior consistent statement, the admission was harmless because evidence of guilt was overwhelming).

[6] See *Johnson v. State*, 293 Ga. App. 728, 729 (1) (667 SE2d 637) (2008) (victim's voice identification of masked armed robber by the victim sufficient); *Whitehead v. State*, 232 Ga. App. 140-141 (1) (499 SE2d 922) (1998) (victims' testimony that they recognized the assailant, whose face was covered by a ski mask, as a former employee based on his voice, physical attributes, and phrasing was sufficient to support conviction for armed robbery and aggravated assault); *Stirrat v. State*, 226 Ga. App. 350, 351 (1) (486 SE2d 640) (1997) (voice, body motion, and physical build of masked assailant provided sufficient basis for identification and conviction).

[7] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[8] (Punctuation and footnotes omitted.) *Greenwood v. State*, 309 Ga. App. 893, 894 (1) (714 SE2d 602) (2011).

termination, and "I didn't want the jury to think I was . . . holding back. And we were going to deal with the fact that he had been fired or terminated, but that that didn't factor into this whole situation. . . . We were just going to get it out in the open. I didn't want [the prosecutor] to be the first one to . . . mention it."

> [D]ecisions regarding whether and how to conduct cross-examinations and what evidence to introduce are matters of trial strategy and tactics and are within the exclusive province of counsel after consultation with the client. Indeed, such tactical decisions provide no grounds for reversal unless they are so patently unreasonable that no competent attorney would have chosen them.[9]

Trial counsel's strategy was reasonable and did not constitute ineffective assistance of counsel.[10]

(b) Donald also maintains that trial counsel was ineffective by asking Jones during cross-examination if he could identify the perpetrator in court because Jones had not done so on direct examination. At the motion for new trial hearing, trial counsel testified that he asked the question because he sometimes asked witnesses to make in-court identifications "hoping they'll say no, I can't. And then I use that in my closing argument that they didn't identify. And then if they say . . . yeah[,] I could always say, well, you didn't identify him at the scene, did you. You were never shown a photo I.D." "Trial counsel's strategic decision was reasonable, and such a strategic decision is not grounds for finding ineffective assistance."[11]

(c) Donald also argues that trial counsel rendered ineffective assistance by failing to file any pretrial motions regarding identification. Donald, however, does not specify the motions he contends trial counsel should have filed, and he has failed to demonstrate that the result of the trial would have been different if such motions had been filed. Thus, Donald has failed to establish prejudice resulting from the failure to file pretrial motions regarding identification.[12]

(d) Next, Donald contends that trial counsel was ineffective for failing to object to evidence that Donald had been fired from the restaurant for violating a no-violence policy, arguing that such

---

[9] (Punctuation and footnotes omitted.) *Buis v. State*, 309 Ga. App. 644, 647-648 (710 SE2d 850) (2011).

[10] See *Bell v. State*, 302 Ga. App. 359, 361 (691 SE2d 259) (2010).

[11] (Punctuation omitted.) *Cobb v. State*, 309 Ga. App. 70, 77 (4) (b) (709 SE2d 9) (2011).

[12] See id. at 78 (4) (c); *Pringle v. State*, 281 Ga. App. 230, 234 (2) (a) (635 SE2d 843) (2006).

evidence constituted inadmissible bad character evidence. We disagree.

The testimony was relevant to the issue of Donald's motive for his actions — to show that he was angry that he had been fired and was seeking revenge against the general manager of the restaurant. "The State is permitted to present evidence of a defendant's possible motive for committing a crime, and such relevant evidence is not rendered inadmissible because it may incidentally place the defendant's character into evidence."[13] Thus, this enumeration presents no basis for reversal.

(e) Donald further contends that trial counsel rendered ineffective assistance by failing to object to testimony from Alphabet's sister regarding Alphabet's medical condition, arguing that her testimony constituted inadmissible hearsay.[14] Although Donald raised this issue in his supplemental motion for new trial, he expressly withdrew it at the hearing. Therefore, he has waived this argument.[15]

(f) Finally, Donald argues that trial counsel rendered ineffective assistance by failing to prepare him for cross-examination. Specifically, Donald points to the fact that he "had no answer as to why [a] weapon was found in the vehicle [he was driving]."

At the motion for new trial, trial counsel testified that he met with Donald at the jail and spoke with him on the phone multiple times before trial. He further testified that he discussed with Donald both before and during the trial whether Donald should testify in his own behalf.[16] Donald did not testify at the motion for new trial hearing.

> In the absence of a proffer showing how further preparation would have changed [Donald's] testimony such that it would have affected the outcome of the case, [Donald] cannot meet his burden of making an affirmative showing that specifically demonstrates how counsel's failure would have affected the outcome of his case. As [Donald] has not

---

[13] *King v. State*, 275 Ga. 463, 465 (2) (569 SE2d 518) (2002).

[14] Specifically, Donald points to testimony from Alphabet's sister describing a photograph of Alphabet in the hospital and stating that Alphabet was unconscious for 14 days, was in the hospital from July to November, and was intubated.

[15] See *Vincent v. State*, 276 Ga. App. 415, 417 (3) (623 SE2d 255) (2005) ("[T]his enumeration was expressly abandoned at the hearing on [defendant's] motion for a new trial, and it is therefore not preserved for review on appeal.").

[16] Counsel could not, however, "specifically remember addressing about the weapon . . . at th[at] point [in] time."

made such a proffer, his claim that trial counsel was ineffective because he inadequately prepared [Donald] to testify at trial also fails.[17]

*Judgment affirmed. Ellington, C. J., and Miller, P. J., concur.*

DECIDED OCTOBER 21, 2011.

*Brandon Lewis*, for appellant.
*Tracy Graham-Lawson, District Attorney, Billy J. Dixon, Assistant District Attorney*, for appellee.

---

[17] (Punctuation and footnote omitted.) *Thomas v. State*, 285 Ga. App. 290, 293-294 (2) (645 SE2d 713) (2007).