S12A0979. SIMMONS v. THE STATE.
(732 SE2d 65)

MELTON, Justice.

Following a jury trial, Dwight Simmons appeals his conviction for malice murder, felony murder, aggravated assault, theft by taking, possession of a firearm during the commission of a crime, and possession of a knife during the commission of a crime,[1] contending, among other things, that the trial court made numerous evidentiary

---

[1] On April 11, 1989, Simmons was indicted for the malice murder, felony murder, and aggravated assault of Willie and Bessie Lewis, in addition to armed robbery of Bessie Lewis, theft by taking from Willie Lewis, possession of a firearm during the commission of a crime, and possession of a knife during the commission of a crime. The State sought the death penalty. Following a jury trial ending on November 13, 1990, Simmons was found guilty of all crimes except the malice murder and armed robbery of Bessie Lewis. Thereafter, in accordance with the jury's decision that the death penalty was not warranted, the trial court sentenced Simmons to life imprisonment for the malice murder of Willie Lewis and a consecutive life sentence for the felony murder of Bessie Lewis. In addition, Simmons was sentenced to five consecutive years for each count of theft by taking, possession of a firearm, and possession of a knife. The conviction for the felony murder of Willie Lewis was vacated by operation of law, see *Malcolm v. State*, 263 Ga. 369 (4) (434 SE2d 479) (1993), and the remaining convictions were merged for purposes of sentencing. A motion for new trial was filed on December 3, 1990, and, following the appointment of new counsel, amended motions were filed on February 6, 2007, June 14, 2011, and June 17, 2011. The trial court denied the motion for new trial on October 12, 2011, and Simmons's timely appeal, docketed to the April 2012 term of this Court, was orally argued.

errors and that he received ineffective assistance of counsel. For the reasons set forth below, we affirm.

1. Viewed in the light most favorable to the verdict, the record shows that, on April 6, 1989, Simmons went to the home of his aunt and uncle, Bessie and Willie B. Lewis. Shortly thereafter, high school friends of Simmons showed up at the Lewis home and saw Bessie and Willie lying motionless on the floor. Police were called, and they discovered that Bessie had been killed with a shotgun and Willie had been stabbed to death. Bloody shoe tracks made by Converse tennis shoes led to the back door.

Outside the house, Captain Enckler asked everyone who had gathered at the scene if they had been in the house, and Simmons admitted that he had been. Despite the chilly temperature, Simmons was then wearing only a tank top, shorts, and no shoes, although he had been seen wearing sweat pants earlier in the day. Finding this behavior odd, Captain Enckler asked Simmons what had happened to his shoes. Simmons replied that they were at home, and Captain Enckler offered to drive Simmons to his home so that he could get them. While inside his home, Simmons chose a pair of Nikes. Simmons put on sweat pants and a jacket, and they returned to the Lewis home. Captain Enckler then gave Simmons his *Miranda* warnings. Simmons indicated that he understood his rights, agreed to talk, and said he did not know anything about the murders. Simmons was next taken to the sheriff's department. *Miranda* warnings were reissued, and, after fabricating certain stories, Simmons admitted to the murders. Simmons told police that, after killing his aunt and uncle, he exited through the back door and threw the shotgun in a nearby pond. The following day, divers found the gun in an irrigation pond approximately a quarter mile from the Lewis house. Also, officers executed a search warrant at Simmons's home and seized items of Simmons's clothing, including a pair of wet and muddy sweat pants found in a trash can and a pair of white Converse tennis shoes.

This evidence was sufficient to enable the jury to find Simmons guilty of the crimes for which he was convicted beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Simmons contends that his pre-trial admissions to the crime were coerced and should have been suppressed. The record, however, does not support his contention. Before he made incriminating statements both at the scene and later at the station during an interview, Simmons received and waived his *Miranda* warnings. In addition to

this evidence, Simmons's interrogators testified that they made no threats or promises and did not coerce Simmons in any way.

> On appeal, we will accept the trial court's factual findings and credibility determinations regarding the admissibility of a defendant's statement unless the record shows them to be clearly erroneous. See *Bright v. State*, 265 Ga. 265, 280 (455 SE2d 37) (1995). The record here fully supports the court's finding that [Simmons]'s statement was voluntary and that he was advised of but did not invoke his right to counsel . . . until well into the interview, which the officers then properly ended.

*Johnson v. State*, 289 Ga. 498, 500 (2) (713 SE2d 376) (2011). Accordingly, the trial court did not err in admitting Simmons's statements.

3. Simmons also contends his statement of guilt during a first appearance hearing was improperly admitted into evidence, arguing that he was denied the right to have counsel present at the time. We disagree.

On April 7, 1989, after Simmons requested an attorney, Magistrate Judge Nick Lazaros arrived at headquarters to hold a first appearance hearing in compliance with the Uniform Rules for the Magistrate Courts. At this hearing, Judge Lazaros began reading a checklist advising Simmons of his charges and his rights. No one initiated any questioning of Simmons. At that point, Simmons spontaneously stated, "I'm guilty. I'm guilty."

Prior to his trial, Simmons moved to suppress this confession, arguing that he had been denied the right to counsel at a critical stage of the proceedings. The trial court suppressed the confession, and, in a granted interlocutory appeal, this Court reversed, holding that the first appearance hearing was not a critical stage of judicial proceedings. See *State v. Simmons*, 260 Ga. 92 (390 SE2d 43) (1990). As a result of this ruling, Judge Lazaros was allowed to testify at trial, over objection, as to Simmons's statement of guilt. Over a decade later, in *O'Kelley v. State*, 278 Ga. 564, 567 (2) (604 SE2d 509) (2004), this Court overruled prior case law indicating that a first appearance hearing was not a critical stage of proceedings, stating:

> [W]e overrule [prior case law] and hold that an initial appearance hearing, although often not a critical stage of a criminal proceeding in its own right requiring the actual presence of a defense attorney, is a formal legal proceeding wherein the Sixth Amendment right to counsel attaches.

In *O'Kelley*, however, we did not consider the admissibility of Simmons's statement of guilt.

Turning now to that statement, the record shows that it was spontaneously given in the absence of any questioning. "Any statement given freely and voluntarily without any compelling influences is, of course admissible in evidence." (Citation and punctuation omitted.) *Rhode Island v. Innis*, 446 U. S. 291, 299-300 (II) (A) (100 SC 1682, 64 LE2d 297) (1980). "Voluntary, spontaneous outbursts that are not made in response to any form of custodial questioning or interrogation are admissible at trial." (Citations and punctuation omitted.) *State v. Davison*, 280 Ga. 84, 87-88 (2) (623 SE2d 500) (2005). There was no error in the admission at trial of Simmons's statement of guilt made at his first appearance hearing.

4. Simmons maintains that the trial court erred by denying a motion for continuance he made at a pre-trial hearing held on October 18, 1990, citing particular colloquy with the court in the transcript. Specifically, Simmons maintains that he was forced to go to trial without the benefit of the transcribed voir dire of the initial panel of jurors chosen prior to the interlocutory appeal of his motion to suppress.[2] A review of the transcript, however, shows that no such motion for a continuance was made. To the contrary, Simmons's trial counsel clearly stated that the absence of the transcript was not a hindrance to proceeding to trial. There was no motion for continuance, so there is no ruling for this Court to review. In any event, Simmons's trial counsel acquiesced in going to trial without the transcript. Simmons's enumeration lacks merit.

5. Simmons contends that he received ineffective assistance of counsel because trial counsel failed to (a) pursue his motion for new trial in a timely manner and (b) show Simmons the entirety of his case file prior to trial and discuss it with him.

> In order to succeed on his claim of ineffective assistance, [Simmons] must prove both that his trial counsel's performance was deficient and that there is a reasonable probability that the trial result would have been different if not for the deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). If an appellant fails to meet his burden of proving either prong of the *Strickland* test, the reviewing court does not have to examine the other prong. Id. at 697 (IV); *Fuller v. State*, 277 Ga.

---

[2] Ultimately, the initial panel was dismissed when the interlocutory appeal was filed, and, following the appeal, a new jury had to be chosen.

505 (3) (591 SE2d 782) (2004). In reviewing the trial court's decision, " '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.' [Cit.]" *Robinson v. State*, 277 Ga. 75, 76 (586 SE2d 313) (2003).

*Lytle v. State*, 290 Ga. 177, 180 (4) (718 SE2d 296) (2011).
    (a) There is no question that the inordinate delay in the disposition of Simmons's motion for new trial is inappropriate.

> Nevertheless, in this case, even assuming that trial counsel's performance was constitutionally deficient, [Simmons] has failed to show that his appeal has been prejudiced by the delay. "[A]ppellate delay is prejudicial when there is a reasonable probability that, but for the delay, the result of the appeal would have been different." *Chatman v. Mancill*, 280 Ga. 253, 260-261 (626 SE2d 102) (2006) (citations and punctuation omitted). [Simmons] points to no change in the law or facts or loss of material evidence . . . that would raise a reasonable probability that the outcome of his appeal would have been different but for the delay in pursuing his motion for new trial. See *Loadholt v. State*, 286 Ga. 402, 406 (687 SE2d 824) (2010) (holding that there can be no prejudice in a delay pending appeal where the enumerations raised on appeal are without merit).

*Shank v. State*, 290 Ga. 844, 849 (5) (c) (725 SE2d 246) (2012). Moreover, as discussed above, there is no merit to Simmons's other enumerations. " '[T]here can . . . be no prejudice in delaying a meritless appeal.' [Cit.]" (Punctuation omitted.) *Loadholt*, supra, 286 Ga. at 406 (4).
    (b) Although Simmons maintains that he received ineffective assistance because trial counsel failed to show him all the documents in his file prior to trial, he has made no claim as to how this failure, if it occurred, specifically harmed his defense. At best, he speculates that he could have given his counsel input on his file, but he does not indicate what this input would have been. Therefore, Simmons has shown no prejudice, and his claim of ineffective assistance fails. *Lytle*, supra, 290 Ga. at 180 (4).
    *Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 1, 2012 —
RECONSIDERATION DENIED OCTOBER 15, 2012.

*Jeffrey L. Grube*, for appellant.

*George H. Hartwig III, District Attorney, Marie R. Banks, Daniel P. Bibler, Assistant District Attorneys, Samuel S. Olens, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.