NOTICE: This opinion is subject to modification resulting from motions for reconsideration under Supreme Court Rule 27, the Court's reconsideration, and editorial revisions by the Reporter of Decisions. The version of the opinion published in the Advance Sheets for the Georgia Reports, designated as the "Final Copy," will replace any prior version on the Court's website and docket. A bound volume of the Georgia Reports will contain the final and official text of the opinion.

In the Supreme Court of Georgia

Decided: June 21, 2023

S23A0733.  BASULTO v. THE STATE.

PETERSON, Presiding Justice.

Jose Basulto appeals his convictions for felony murder and aggravated assault stemming from an incident in which he drove his truck into several pedestrians after a bar fight. Basulto's actions resulted in the deaths of two of the pedestrians, Regulo Rodriguez Hernandez and Jose Lopez Diaz, and left Ramona Gaspar Carmona seriously injured.[1] Basulto's only argument on appeal is that the

---

[1] The crimes occurred on June 9, 2020. On February 24, 2021, a Gwinnett County grand jury indicted Basulto for two counts of felony murder (both predicated on aggravated assault) and three counts of aggravated assault. In June 2022, a jury found Basulto guilty of all counts. The trial court sentenced Basulto to two sentences of life without parole for the felony murder counts, plus a consecutive 20-year sentence for the aggravated assault of Carmona. The remaining counts were merged for sentencing purposes. Basulto filed a timely motion for new trial on June 21, 2022; the motion was amended on January 26, 2023. Following a hearing, the trial court denied the motion in an order entered on February 13, 2023. Basulto filed a timely notice of appeal, and his appeal was docketed to this Court's April 2023 term and submitted for consideration on the briefs.

trial court erred by refusing to remove a juror who revealed new information about the juror's criminal history after being selected for the jury. Because the trial court did not abuse its discretion in failing to remove the juror, we affirm.

The evidence at trial showed as follows. In the early morning hours of June 9, 2020, Hernandez, Diaz, and Carmona were drinking beer together in a Gwinnett County bar. Basulto, another patron at the bar, got into an argument with Hernandez. After dispersing to the parking lot, Basulto and Hernandez got into a fist fight; Basulto lost. Someone broke up the fight, and Hernandez, Diaz, and Carmona began walking home. Basulto, having been beaten up by Hernandez and visibly angry, got into his truck. Basulto proceeded to strike all three of the other men with his truck, killing Hernandez and Diaz and seriously injuring Carmona.

As noted above, the only issue Basulto raises on appeal is the trial court's handling of an issue involving a selected juror, Juror No. 26. During voir dire, Juror No. 26 had responded affirmatively to various general questions posed by the parties, such as whether

anyone on the panel had military experience. But Juror No. 26 had not responded affirmatively to the prosecutor's questions asking whether any prospective jurors had been convicted of a felony and not had their rights restored or had been arrested, prosecuted, or convicted of a criminal offense "more severe than DUI" or "DUI and up."[2] During individual voir dire, Juror No. 26 had reported that he was a retired roofer who had served in the Marine Corps and at one point had his foot run over by a vehicle in a hit-and-run accident; Juror No. 26 had verified that he could be fair to both sides of the case.

After the jury was selected, but before it was sworn in, the selected jurors were sent home for the night. Upon returning for trial the following day, Juror No. 26 sent a note to the trial court stating that he had made a false statement during jury selection. The juror claimed that he had recalled overnight that he had, in fact, been charged and convicted of a felony. In his note, Juror No. 26 opined

---

[2] Asked by an unidentified prospective juror to repeat the question, the prosecutor phrased it differently.

that Basulto "deserve[d] better" than to have his trial postponed or cancelled due to the juror's involvement.

Juror No. 26's note was read to the parties, and both the State and Basulto agreed that the juror should be brought into the courtroom for further questioning by the court; that questioning revealed some uncertainty on the juror's part regarding his own criminal history. A Georgia Crime Information Center report was obtained, revealing that Juror No. 26 was not a convicted felon, although he had been arrested several times on various charges, more than 20 years prior to the trial, and some of those arrests had resulted in misdemeanor convictions. One of the arrests was for aggravated assault, for which he pleaded guilty to a reduced misdemeanor charge of disorderly conduct. Defense counsel acknowledged that it did not appear that Juror No. 26 was disqualified from service by virtue of being a convicted felon and stated that he "would defer to the State as to what they wish to do," that he did not "really have a great desire to replace him," and that he was "perfectly happy with" the selected juror. But when the trial

4

court then asked the parties if they wished to question the juror further, defense counsel requested additional questioning of the juror, which the trial court allowed. During that additional questioning, Juror No. 26 evidenced a lack of recollection about the prior arrests and indicated he did not respond to the voir dire question about previous arrests because he misunderstood the question and thought it was about DUI specifically.

After the additional questioning of the juror was complete, the trial court asked the prosecutor for his position; the prosecutor stated that the State did "not find a sufficient basis to excuse the juror at this time." The defense then asked the trial court to replace the juror with an alternate, while allowing that Juror No. 26 was not a convicted felon and counsel did not "think he was being deliberately deceptive." Counsel stated that "given the nature of the charge in this case, given the fact that he was charged with one of the same crimes, and given the fact that he has essentially no recollection of what happened in all of these cases, he is not the person we thought we were putting on the jury, essentially." Counsel

5

added that the juror should be dismissed because "while he was not perhaps intending to be deceptive, he was nonetheless not disclosing information that needed to be related to us to pick a jury." Finding that the juror had not "deliberately left . . . out" information about his criminal history or "tried to be deceptive" and had not given answers giving rise to a conclusion that he was not qualified to serve, the trial court ruled that Juror No. 26 would remain on the jury. After the court ruled, defense counsel said he "would stand by [his] previous objection." The case proceeded to a trial before a jury that included Juror No. 26, and the jury found Basulto guilty on all counts.

Basulto argues on appeal that the trial court abused its discretion when it refused to remove Juror No. 26. His claim fails.

In felony criminal trials, a trial court is statutorily obligated to hear objections to prospective jurors based on a number of specified disqualifying characteristics, including that the juror has been convicted of a felony and not had his or her civil rights restored. See OCGA § 15-12-163. And the trial court "shall" dismiss the juror for

cause if the court is satisfied of the truth of any such objection on that basis. OCGA § 15-12-163 (c). The trial court also is obligated to "excuse for cause any juror who from the totality of the juror's answers on voir dire is determined by the court to be substantially impaired in the juror's ability to be fair and impartial." OCGA § 15-12-164 (d). Objections to a juror for cause must be made before the juror is sworn in the case if the basis for the objection is known to the party or his counsel, but "newly discovered evidence to disprove the juror's answer or to show him incompetent may be heard by the judge at any time before the prosecuting counsel submits any of his evidence in the case[,]" and if a "juror is proved incompetent, the judge shall order him to withdraw from the jury and shall cause another juror to be selected." OCGA § 15-12-167.

In addition to the statutory bases for which it is required to disqualify a juror prior to the State beginning its presentation of evidence, the trial court also must replace a seated juror with an alternate "[i]f at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good

7

cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause[.]" OCGA § 15-12-172. We have said that this provision "vests trial courts with broad discretion to discharge a juror and replace him or her with an alternate at any time as long as the court has a sound legal basis." *Johnson v. State*, 289 Ga. 498, 501 (3) (713 SE2d 376) (2011) (citation and punctuation omitted).[3]

Here, Basulto requested Juror No. 26's removal before the jury was sworn in and before the State began its presentation of evidence in the case, relying on information apparently acquired only after the juror had been deemed competent and selected for service. Therefore, the trial court would have been bound to remove the juror had either party proven a challenge for cause under OCGA § 15-12-163 or OCGA § 15-12-164. But Basulto did not challenge the juror

---

[3] Of course, this discretion is not unfettered, and must be exercised with the utmost care once jury deliberations have begun, especially when considering whether to remove a dissenting juror when the jury is deadlocked, given the need to safeguard a defendant's right to a unanimous verdict. See *Jones v. State*, 314 Ga. 214, 223 (2) (b) (875 SE2d 737) (2022).

under OCGA § 15-12-163, conceding that Juror 26 was not disqualified by virtue of a felony conviction. And Basulto did not argue that the juror was disqualified under OCGA § 15-12-164 on the ground that his answers showed that he was substantially impaired in his ability to be fair and impartial. Although Basulto alluded to the fact that Juror No. 26 had been charged with a similar crime (presumably, aggravated assault) and referenced the juror's lack of recollection about the particulars of his criminal history, Basulto did not explain how that could have impaired the juror's ability to be fair and impartial. Compare *Washington v. State*, 253 Ga. 173, 173-174 (2) (318 SE2d 55) (1984) (no abuse of discretion in removing juror who realized after being selected that he was acquainted with the defendant and admitted in follow-up questioning that the potential of bias worried him). "[T]he law presumes that potential jurors are impartial, and the burden of proving partiality is on the party seeking to have the juror disqualified." *Terrell v. State*, 313 Ga. 120, 125-126 (1) (868 SE2d 764) (2022) (citation and punctuation omitted).

Basulto did also suggest that Juror No. 26 should be dismissed not because of any particular characteristic or statement, but because of his failure to disclose requested information sooner. Counsel argued that the juror should be dismissed because he had "not disclos[ed] information that needed to be related to us to pick a jury" such that "he is not the person we thought we were putting on the jury, essentially." We have said that it is not an abuse of the trial court's broad discretion under OCGA § 15-12-172 "to remove a juror who fails during voir dire to provide accurate information that [a party] has a legitimate right to know." *Johnson*, 289 Ga. at 500-501 (3) (rejecting argument that the trial court erred in replacing juror with alternate after jury was sworn based on juror's admission that contrary to answers on voir dire she had been arrested and that her son was on probation and was being prosecuted by the DA's office handling the case). But that is not to say that it is an abuse of discretion to *decline* to remove a juror who does not respond to voir dire questions accurately. Moreover, here, the trial court found that Juror No. 26 had not "deliberately" omitted information in response

to voir dire questioning or otherwise "tried to be deceptive." Indeed, the question at issue, asking whether jurors had ever been arrested, prosecuted, or convicted of a criminal offense "more severe than DUI" or "DUI and up," reasonably could be viewed as imprecise and confusing, as it assumed prospective jurors would know which crimes were considered more "severe" than DUI. On this record, we cannot say that the trial court abused its discretion in declining to remove Juror No. 26.

*Judgment affirmed. All the Justices concur.*